Turner, J.
 

 We cannot accept appellant’s statement of the question of law involved, to wit:
 

 “The question of law involved is whether tbe property belonging to Columbus Metropolitan Housing Authority is exempt from taxation as public property used for a public purpose * * V’
 

 The question before the Board of Tax Appeals was whether the property belonging to appellant
 
 is
 
 used
 
 exclusively
 
 for any public purpose. Unless the property is exclusively so used, it may not be exempted from taxation.
 

 As said by Judge Shauck in
 
 City of Cincinnati
 
 v.
 
 Lewis, Aud.,
 
 66 Ohio St., 49, 55, 63 N. E., 588: “That the public ownership of property was not alone thought sufficient to exempt it from taxation is made obvious by the requirement that an exclusive use for a public purpose shall coincide with such ownership.”
 

 The question now before us is whether the decision of the Board of Tax Appeals is reasonable and lawful (Section 5611-2, General Code).
 

 
 *42
 
 The Board of Tax Appeals being limited to determining whether the
 
 present
 
 use of the property is
 
 exclusively
 
 for any public purpose, we are not concerned with the former use of the property or the reasons for the change. Therefore, such subjects as slum clearance, the right of condemnation, housing conditions, and health and sanitary measures are not before us. Admittedly, the property is no longer slum property and the housing, health and sanitary conditions there obtaining are not now a ground of complaint.
 

 The case of
 
 State, ex rel. Ellis, City Solicitor,
 
 v.
 
 Sherrill, City Manager,
 
 136 Ohio St., 328, 25 N. E. (2d), 844, is not in point here. In the case of
 
 State, ex rel. Bartlett, Pros. Atty.,
 
 v.
 
 Thatcher, County Aud.,
 
 138 Ohio St., 235, 34 N. E. (2d), 440, it was held in respect of the
 
 Sherrill case:
 
 “The majority opinion and decision did not take into consideration the question of tax exemption.”
 

 Appellant claims exemption under Section 5351, G-eneral Code. While this section reads, “Real or personal property belonging exclusively to the state or the United States, and public property used for a public purpose shall be exempt from taxation,” yet this language is to be read in the light of the Constitution of Ohio and this court will not assume that the Legislature intended to violate any constitutional limitation.
 

 Section 2 of Article XII of the Constitution of Ohio provides, in part:
 

 “Land and improvements thereon shall be taxed by uniform rule according to value * * * and without limiting the general power,
 
 subject to the provisions of Article I of this Constitution,
 
 to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt * * * public property used
 
 exclusively
 
 for any public purpose * * *(Italics ours.)
 

 All land and improvements must be taxed except such as may be exempted by general law. . Such gen
 
 *43
 
 eral law must observe the constitutional mandate of equal protection.
 
 State, ex rel. Struble, v. Davis,
 
 132 Ohio St., 555, 9 N. E. (2d), 684.
 

 The word “exclusively” may not be read out of this section and any statute which intentionally disregarded this feature would be unconstitutional.
 

 • That it is the duty of this court to give a statute a constitutional construction, if possible, needs no citation of authority. If we were to hold Section 5351, General Code, invalid, appellant would fail. However, we hold that Section 5351 is not invalid and that it authorizes the exemption only of public property used exclusively for any public purpose.
 

 Before the Board of Tax Appeals it was stipulated that appellant is a body politic and corporate, duly organized and existing under the housing laws of the state of Ohio.
 

 Under the stipulations entered into before the Board of Tax Appeals, we assume that appellant comes within the term “housing authority” as used in Section 1078-36, General Code, which provides in part as follows: “All property, both real and personal, acquired, owned, leased, rented or operated by the housing- authority shall be deemed public property for public use * * *.” It will be noted that the Legislature has not attempted to declare that such property shall be deemed public property used
 
 exclusively
 
 for any public purpose. Here again, we assume that the Legislature was mindful of the constitutional limitation.
 

 It would hardly be contended that the property of a limited dividend housing company created under the state housing law (Section 1078-1
 
 et seq.,
 
 General Code) would be exempt from taxation. Yet, in respect of such corporations it is provided in Section 1078-15, General Code, that the articles of incorporation shall contain a declaration that the corporation has been organized to serve a public purpose and “that all real estate acquired by it and all structures erected by it,
 
 *44
 
 shall be deemed to be acquired for the purpose of promoting the health and safety and subject to the provisions of the state housing law * *
 

 In Ohio, it is axiomatic that exemptions from taxation are to be strictly construed. As said by Judge Spear in
 
 Lee
 
 v.
 
 Sturges,
 
 46 Ohio St., 153, 159, 19 N. E., 560: “Intent to confer immunity from taxation must be clear beyond a reasonable doubt, for, as in case of-a claim of grant, nothing can be taken against the state by presumption or inference.”
 

 We see no reason for a distinction being made in the case of publicly owned property. In the recent case of
 
 In re Estate of Taylor,
 
 139 Ohio St., 417, 40 N. E. (2d), 936, it was held:
 

 “A right to exemption from taxation must appear with reasonable certainty in the language of the Constitution or valid statute and must not depend upon a doubtful construction of such language.”
 

 We pointed out in the
 
 Taylor case
 
 that this was not a declaration of any new or novel principle. From the earliest history of our state down to the present time, there has been no presumption favorable to the exemption of property from taxation. As stated by Judge Matthias in the case of
 
 Cullitan., Pros. Atty.,
 
 v.
 
 Cunningham Sanitarium,
 
 134 Ohio St., 99, 100, 16 N. E. (2d), 205:
 

 “On the contrary, the .right to such exemption must be shown ‘indubitably to exist.’ ”
 

 This brings us to an examination of the facts before the Board of Tax Appeals to determine whether the decision of the board was unlawful or unreasonable. It was stipulated before the board,
 
 inter
 
 alia:
 

 “7. The authority has erected within the limits of the village 426 dwelling units, together with a recreation center, central heating plant and playground. The erection of said dwelling units was begun June 12, 1939, and was completed June 25, 1940. Of the 426 new dwelling units 208 contained 3% rooms each, 159
 
 *45
 
 contained 4% rooms each and 59 contained 5% rooms each.
 

 “8. The first dwelling unit was occupied May 1, 1940, and by September 26, 1940,
 
 97°/o
 
 of' the dwelling units were rented and occupied. The last unit was rented and occupied October 5, 1940. * * *
 

 “10. The lowest rent charged, including utilities is, per month $18.25. The highest rent charged, including utilities is, per month $19.25. The average shelter rent is, per month $12.40. ‘Shelter rent’ as used herein shall mean the gross rent for a dwelling unit less the amount charged for utilities.
 

 “Average charges for utilities for the'426 dwelling units is $6.18 per unit per month, which includes heat, light, gas, water a.nd sewer services.
 

 “11. The present use of said dwelling units is for rental purposes, for private living quarters for such persons and their families as are admitted by the authority, who are able to qualify according to standards as to family, employment, income and living conditions, as are fixed by the statutes, and by the authority.”
 

 Under paragraph 15 of the stipulation it was shown that upon a valuation of $800,000 for the project costing approximately $2,000,000 the taxes would add $3.13 per month to the rent for each unit. The rents, exclusive of taxes and utilities, are fixed at approximately fifty per cent of the cost of the service.
 

 In addition to the stipulation of facts, Mr. O. A. Corzelius, a director and secretary of appellant, testified orally before the Board of Tax Appeals.
 

 The following selections from the testimony of Mr. Corzelius throw light upon the present use of the property:
 

 “Q. Mr. Corzelius, the only people you take in the property are the ones that can afford to pay the rent; isn’t that correct? A. That is right, either
 
 *46
 
 from their own income or any definite aid that they might be getting.
 

 “Q. In other words, if they can’t pay the rent, you don’t take them? A. That is right.
 

 “Q. And I understand you to say that 85 of the people that were in the original project were on direct relief, and, therefore, you couldn’t take them; isn’t that correct? A. That is right. However, on relief families, if some agency will definitely guarantee the rent, we will take the poor families in the project.
 

 “Q. That is where you get a definite guarantee, but for instance I understood you to say there were 85 families getting direct relief that were in the project, and for that reason they were ineligible ? A. We considered them ineligible until they could prove otherwise. * * *
 

 “Q. Don’t you have a rule like this, every tenant shall have an income which is sufficient to pay the rent and provide for necessary living expenses? A. We do.”
 

 “Q. And if a tenant can’t pay his rent, you give him a notice to move just the same as a private land owner might, don’t you? A. That is right.-
 

 “Q. He either has to move or you evict him? A. That is right. * * *
 

 “Q. In the event any of the tenants fail to pay their rent, how soon after due date is notice served for vacation? A. We send them a notice within 10 days. We send a notice of delinquency usually within five days, and not to exceed ten, and if they run over 30 days they are given notice to vacate.
 

 “Q. Upon failure to comply with that order, what do you do? A. We would have to evict them; but so far we have not had any of that to do. We have served notice on them and the families have, moved. Since we have started occupancy, families have moved out owing less than $100 total. We have had 17 turnovers; 17
 
 *47
 
 families have moved out, and the 17 families owe us less than $100.”
 

 “Q. Let me ask you this one question. Has any direct relief client ever been admitted as a tenant in this project? A. We have direct relief clients in this project, but the relief department will not guarantee a sufficient amount to cover the cost and unless the tenant can show that he can pay the difference, he would not be admitted. After admittance, if they go on relief, and a tenant can show he can continue to pay his rent, with what he can get through relief, we don’t give him a notice to vacate. * * *
 

 “Q. * * * Did I understand you to say there were 30 former site tenants now in this project? A. The latest count was 27. I think there were 30 out of the 60 that made application who could qualify, but some of them, for some reason or other, after they were ■notified, didn’t want to—
 
 * *
 
 *”
 

 “Q. And when you talk about substandard dwellings, that is axi altogether different thing than slum dwellings, isn’t it? A. Not necessarily.
 

 “Q. No. In other words a slum dwelling might be a substandard, but all substandard dwellings might not be slums; is that correct? A. That is right.
 

 ‘ ‘ Q. For example, if there is not hot and cold water in the house, that would be substandard under your rules, wouldn’t it? A. That is right.
 

 “Q. If there isn’t an inside private tub and shower, that would be substandard under your rules, wouldn’t it? A. That is right. * * *
 

 “Q. And if the rooms were without electric outlets, that would constitute a substandard dwelling, would-n’t it? A. It would have to have electric lights, yes.”
 

 The Board of Tax Appeals had before it evidence which shows that the appellant selects, not from slums, but “regardless of where they formerly lived,” tenants from what appellant considers substandard dwell-
 

 
 *48
 
 Appellant’s resolution establishing rental schedules, policies and standards provides that for the purpose of determining housing conditions under which applicants for dwellings in the project are living, such dwellings should be scored by appellant’s own scoring system.
 

 Out of the residents of 379 dwellings replaced by appellant’s project, but 30 families were found eligible to become tenants and only 27 became tenants.
 

 The evidence shows that the premises in question are leased to private families for renewable terms and that the tenants must have sufficient income to assure that the rentals will be paid.
 

 If it had been necessary to do so, the Board of Tax Appeals might have taken notice as a matter of common knowledge of the fact that under appellant’s substandard housing score sheet and the explanation thereof a very large portion if indeed not a majority of the houses in this state, could be declared substandard.
 

 It seems to us clear that where dwellings are leased to family units for the purposes of private homes, the use of such dwellings is private and not public. Under Anglo-Saxon law and tradition, there is nothing more private than one’s home. Broom’s Legal Maxims (9 Ed.), 283;
 
 Semayne’s Case,
 
 5 Coke, 91, 77 Eng. Rep. R., 194. That every man’s house is his castle has not yet been erased from our laws.
 

 Furthermore, a tax advantage equal to $3.13 per month on home rental given to a selected few persons who are not paupers and who are not aged, infirm or without means of support is violative of the provisions of Section 2 of Article XII and Section 2 of Article I of the Constitution of Ohio. Such tax exemption would shift the tax burden to other home owners and taxpayers.
 

 After hearing and upon consideration of the record and evidence before the Board of Tax Appeals, this
 
 *49
 
 court is of the opinion that the decision of the Board of Tax Appeals appealed from is reasonable and lawful and, therefore, affirms the same.
 

 Decision affirmed.
 

 Weygandt, C. J., Matthias, Hart and Bettman, JJ., concur.
 

 Williams and Zimmerman, JJ., dissent.