The amounts of the assessments are not in dispute but only their validity.
By statute all deposits not excepted or exempted are taxable in the name of the financial institution in which the deposits are made, and the depositee, if so inclined, may pass the charges on to its depositors. See Merchants Mechanics FederalSavings Loan Assn. of Springfield v. Evatt, Tax Commr.,138 Ohio St. 457, 35 N.E.2d 831, 135 A. L. R., 1474, in which the statutory provisions applicable are referred to or quoted.
Two separate fields of inquiry, in respect to the taxability of deposits, are presented. The first concerns entries in real-estate-loan-escrow accounts and loan-suspense accounts on the bank's books showing a liability for proceeds of loans to be held and expended as agreed upon, and the second concerns funds deposited in the account of the Akron Metropolitan Housing Authority, a housing authority organized under the state enabling act known as the Housing Authority Law, Section 1078-29 et seq., General Code.
With respect to the real-estate-loan-escrow and *Page 162 
loan-suspense accounts, appellant urges that the contractual relationship between the borrowers and the bank, giving rise to such accounts is but an executory agreement to make a future loan and does not create an existing bank liability, and that the entries in such accounts are merely balancing entries set up on the books of the bank in accordance with accepted accounting practice and are not deposits within the meaning of Section 5324, General Code.
That section reads:
"The term 'deposits' as so used, includes every deposit which the person owning, holding in trust, or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account or certificates of running or other withdrawable stock, or otherwise * * *."
No claim is made that the amounts so carried as bank liabilities, if found to be deposits, come within any statutory exemption or exception, which makes them nontaxable.
It is now in order to inquire whether the facts bring these accounts within the statutory provisions.
A real-estate-loan-escrow account arises in this way: A person who is about to build a dwelling house or other building requests a loan on the premises to finance the construction. Thereupon the bank makes an investigation of his credit, an examination of the building plans and an inspection of the premises. If the results are satisfactory, a note and mortgage are executed and delivered to the bank by such person and the mortgage is placed on record in the office of the county recorder. The note in the amount of its face value is set up on the books of the bank as an asset and at the same time a counterentry is made on the liability side of the bank's books, equal to the amount *Page 163 
of the note. Afterwards the title is examined and, when required, insurance approval is sought from the Federal Housing Authority, pursuant to Section 710-112, General Code. If the title is found defective or the required insurance approval is not given, all obligations are cancelled, the note and mortgage are returned and all steps taken to place the contracting parties in statu quo. If the title is found good and the required insurance approval is given, the bank, in accordance with the mortgage provisions, pays out the money to the building contractor as construction proceeds. No interest is charged by the bank until such payments are made, and then only on each amount from and after the time of payment. No money is ever paid to the borrower nor is the amount set up in the account as the bank's liability subject to his check or order. Any balance that may remain in the account after the construction is complete and bills are paid may be applied on the mortgage indebtedness.
In Merchants Mechanics Federal Savings Loan Assn. ofSpringfield v. Evatt, Tax Commr., supra, this court held that funds placed as credits in a due-borrowers account were general deposits for a specific purpose and taxable as such. A check for the amount borrowed on each construction loan was issued to the borrower and endorsed back to the savings and loan association. The check was cashed by the association and the amount of the proceeds set up as a credit in the due-borrowers account, that is, as a liability of the association. That account did not show to whom the credit belonged but there was a "breakdown" that did. Thereafter the amount was paid out by the association on the order or approval of the borrower as the work progressed on the building for which the construction loan was made.
In Second Federal Savings Loan Assn. of Cleveland *Page 164 
v. Evatt, Tax Commr., 141 Ohio St. 616, 49 N.E.2d 756, there was involved a due-borrowers account with the same general characteristics as in the above cited case, except that, instead of the issuance of a check to the borrower and its endorsement back to the bank, the borrower made an assignment of the proceeds of the construction loan to the bank, and the amount thereof was placed to the credit of the due-borrowers account. By the terms of the assignment the bank was authorized to disburse the fund for the borrower's benefit, in the course of construction without making any accounting to the borrower until the completion of the building and final payment of bills. This court held that the credit was a taxable deposit. Judge Turner in the course of the opinion made it plain that, under Section 5324, General Code, a deposit is none the less a deposit, where the right to make withdrawal therefrom in money is given by the depositor to the bank as his agent. He who acts by agent acts himself.
In the loan-escrow account the setting up of the liability on the bank's books is equivalent to the setting up of a credit in favor of the borrower without mentioning his name. The bank liability is to the borrower or, in other words, the borrower is the owner of the credit. Such an account differs from a due-borrowers account in that in the former the amount borrowed is set up as a bank liability without any written authority to the bank to pay the amount due the contractor from time to time, except such as is given by the construction mortgage. There is no check or assignment as in the cases cited or other separate paper writing. Fundamentally there is no distinction in law as regards the existence of a taxable deposit. In either event the very object is the creation of a credit belonging to *Page 165 
the borrower against which payments may be made as construction proceeds.
In all instances of this kind a dual debtor-creditor relationship arises. The note secured by mortgage begets an indebtedness from the borrower to the bank and the entry of the liability (or credit) in the loan-escrow account, as in the due-borrowers account, evidences an indebtedness against the bank in favor of the person who gave the note and mortgage. The fact that the bank has the right to cancel all obligations arising from the loan upon the happening of the condition that the title proves defective or insurance from the Federal Housing Authority can not be obtained does not change the dual relationship. Such a condition is what is known in law as a condition subsequent and the accrued liability of the bank remains in force until the cancellation takes place. Nor does the fact, that the bank sees fit to waive interest for the period prior to the time the various amounts are paid out for construction, have any bearing upon the question presented.
The loan-suspense account is similar to the real-estate-loan-escrow account. The distinguishing feature is that the former is an out-and-out loan and is not secured by mortgage. When the loan is requested, the bank takes a note for the amount, enters it as an asset of the bank and at the same time enters a like amount as a liability in the loan-suspense account. As money is needed to effect the purpose for which the loan is made, it is paid out by the bank, not to the borrower or through him, but direct to the third party under authority given by the borrower.
It was the legislative intent that funds left with a bank for safekeeping and withdrawal, whether or not with the understanding that they could be used in its business, should be taxable deposits unless excepted *Page 166 
or exempted. The bank cannot by disguising the ownership of such funds through methods of bookkeeping evade or avoid the statutes.
Since the same principle applies to both the loan-escrow and the loan-suspense accounts, the general rule may be stated thus:
Where a note, secured or unsecured, is executed and delivered to a bank to obtain a loan and the bank enters the note on its books as an asset and also sets up thereon in a counterentry a liability in the amount of the note but not in the name of the borrower with the understanding that the amount borrowed shall be paid out by the bank to third persons to accomplish the purposes for which the loan is made, the liability so set up is a credit in favor of the borrower and constitutes a taxable deposit even though the loan is subject to cancellation on the happening of a condition subsequent.
The other contention of appellant, as stated, relates to moneys deposited in the account of the Akron Metropolitan Housing Authority. The moneys so deposited come from loans and contributions made to this housing authority by the federal government and from rents collected from tenants in buildings in the low-rent housing project operated by the authority.
This court has held that land and buildings owned and operated as a low-rent housing project by a housing authority organized under the Housing Authority Law, supra, is not "public property used exclusively for a public purpose" and therefore not exempt from taxation. Columbus MetropolitanHousing Authority v. Thatcher, Aud., 140 Ohio St. 38,42 N.E.2d 437; Dayton Metropolitan Housing Authority v. Evatt, TaxCommr., 143 Ohio St. 10, 53 N.E.2d 896, 152 A. L. R., 223;Youngstown Metropolitan Housing Authority *Page 167 
v. Evatt, Tax Commr., 143 Ohio St. 268, 55 N.E.2d 122.
This court has also held that a low-rent housing project known as Laurel Homes, owned by the Federal Public Housing Authority, an agent or instrumentality of the federal government, and leased by its owner to the Cincinnati Metropolitan Housing Authority was not exempt from state taxation. Federal Public Housing Authority v. Guckenberger,Aud., 143 Ohio St. 251, 55 N.E.2d 265. The judgment in that case was reversed in Federal Public Housing Authority v.Guckenberger, U.S. Supreme Court Reports advance sheets volume 89, No. 5 and the property was held exempt.
Appellant asserts that the latter decision "inferentially overrules" decisions of this court respecting real property used as a low-rent housing project and owned by an agency organized under the Housing Authority Law of this state; that since the real estate is now exempt from taxation by reason thereof, the rentals therefrom, being but the "fruit from the tree," are likewise exempt; and that money received from the federal government and placed in the account to maintain the exempt real property and support the project must, like the real estate itself, be so exempt.
This court cannot endorse that position. The Columbus, Dayton
and Youngstown Housing Authority cases have not been overruled and, so long as they are not, they establish the taxable status of low-rent housing projects owned and operated by housing authorities organized under the state law. The taxing authorities must heed the decisions of this court respecting such state agencies.
Counsel for appellant further contend that such deposits are exempt under Section 5406, General. Code (115 Ohio Laws, 571), which read in part as follows:
"The deposits required to be returned by financial *Page 168 
institutions pursuant to this chapter include all deposits as defined by Section 5324 of the General Code [hereinbefore quoted from] to the extent that such deposits are made taxable by Section 5328-1 of the General Code, excepting deposits belonging to the federal government or any instrumentality thereof; or to the state of Ohio or any county, municipal corporation, school district, township, or other subdivision thereof; or to any other financial institution; or to a dealer in intangibles or a domestic insurance company; or to an institution used exclusively for charitable purposes."
Section 5328-1 is of no controlling importance in the instant case.
Although the funds in part originally belonged to the federal government or an instrumentality thereof, their identity was lost by the depositation and, instead, a debtor-creditor relationship arose between the bank and the depositor, the Akron Metropolitan Housing Authority. To the latter belonged the credits arising from the deposits.
Appellant states arguendo that the Akron Metropolitan Housing Authority comes within the words "other subdivision" as used in the statute.
Section 1078-49a, General Code, provides that a housing authority shall constitute a political subdivision of the state within the meaning of Section 5546-2, General Code. As the latter section provides for a sales tax and does not require its payment where the consumer is a political subdivision of the state of Ohio, plainly the intent of Section 1078-49a is to make the housing authority a political subdivision solely to exempt sales to it from payment of the sales tax. That statute has no application here.
It is a well accepted doctrine recognized by this court that, where words such as "or other subdivision" are *Page 169 
used in connection with preceding associated words, the word "subdivision" is limited in meaning by the words which precede the conjunction. The doctrine is grounded upon the maximnoscitur a sociis. See State v. Liffring, 61 Ohio St. 39,55 N.E. 168, 76 Am. St. Rep., 358, 46 L.R.A., 334, where it was held that in statutory provisions, which forbade the prescribing of "any drug or medicine or other agency" for the treatment of an injury or a disease by one who had not obtained a certificate of qualification to practice medicine or surgery in Ohio, the word "agency" was limited by the meaning of the associated words "drug" and "medicine" and did not include osteopathy whose adherents reject drugs and medicines for the cure of ailments and use mechanical correction, especially manipulation of parts of the body. See, also, State v.Gravett, 65 Ohio St. 289, 62 N.E. 325, 87 Am. St. Rep., 605, 55 L.R.A., 791.
The word "subdivision," being limited in meaning by the associated words which precede it, would include only a subdivision of the kind indicated, and a state agency owning and operating a low-rent housing project would not be a subdivision of the state within the meaning of Section 5406, General Code. The deposits in the Akron Metropolitan Housing Authority were, therefore, not exempt from taxation.
For the reason given, the decision will be and is affirmed.
Decision affirmed.
WEYGANDT, C.J., ZIMMERMAN, TURNER and MATTHIAS, JJ., concur.
BELL and HART, JJ., dissent.
BELL, J., dissents from paragraph one of the syllabus and from the judgment insofar as it affirms that part of the finding and order of the Tax Commissioner, *Page 170 
which held that the loan-escrow and loan-suspense accounts were taxable.