Bell, J.
 

 It should be made clear' at the outset that this public utility was purchased by the city of Cleveland (hereinafter called the city), by virtue of the authority of Section 4 of Article XVIII of the Constitution of Ohio. The money required to pay for the acquired property was derived from the sale of mortgage revenue bonds in the total sum of $17,500,000, issued pursuant to Section 12 of Article XVIII thereof.
 

 The agreed statement of facts discloses that the city owns and uses in the operation of its transit system both real and personal property. Therefore, in our view of this case, two separate and distinct questions must be determined: (1) Did the General Assembly possess authority to pass general laws to exempt from
 
 *350
 
 taxation the real estate here in question? (2) Did the General Assembly by the provisions of Sections 5351 and 5356, General Code, exempt from taxation the personal property here involved?
 

 The power of the General Assembly to pass general laws to exempt real property from taxation is limited by the provisions of Section 2, Article XII of the Constitution; as to personal property, the power of the General Assembly to pass general laws to exempt such property is limited only by Article I of the Constitution. See
 
 State, ex rel. Struble,
 
 v.
 
 Davis et al., Tax Comm.,
 
 132 Ohio St., 555, 9 N. E. (2d), 684, and
 
 Ursuline Academy of Cleveland
 
 v.
 
 Board of Tax Appeals,
 
 141 Ohio St., 563, 49 N. E. (2d), 674.
 

 We shall first direct our attention to the real property. In the Constitution of 1802 there was no limitation upon the power of the General Assembly to exempt either real or personal property from taxation. In the year 1851 such a limitation was written into the Constitution. Section 2, Article XII of the Constitution of 1851 read in part as follows:
 

 “* * * but * * * public property used exclusively for any public purpose * * * may, by general laws, be exempted from taxation *' *
 

 The above language remained in the Constitution, throughout its amendments, until 1929, at which time Section 2 of Article XII was amended by a vote of the people, effective January 1, 1931, to read in part as follows:
 

 ‘‘* * * and, without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt * * * public property used
 
 exclusively
 
 for any public purpose, * * (Italics ours.)
 

 Under Section 2, Article XII of the Constitution of 1851, the power of the General Assembly as to the ex
 
 *351
 
 emption of both real and personal property was limited, whereas, under Section 2, Article XII of the Constitution, as amended, effective January 1, 1931, the power of the General Assembly to exempt is limited to real property only.
 

 It must be kept clearly in mind that the Constitution does not grant tax immunity to any kind or class of property; that the language of Section 2 of Article XII is not a grant of power to the General Assembly but is a limitation upon the general power of that body to grant tax exemption to real property.
 

 There can be no doubt that the constitutional provision relative to exemption of real property from taxation is neither self-executing nor mandatory and in the absence of legislative action all property of the state and its political subdivisions
 
 no matter how used
 
 would be subject to taxation. It is equally certain that the General Assembly in passing general laws to exempt real property from taxation is bound by the limitations of the constitutional provision.
 
 Columbus Metropolitan Housing Authority
 
 v.
 
 Thatcher, Aud.,
 
 140 Ohio St., 38, 42 N. E. (2d), 437.
 

 We are met at the threshold of our consideration with the question: What is meant by the phrase used in Section 2, Article XII, “general laws may be passed to exempt * * *
 
 public property used exclusively for any public purposed”
 

 It is fair to assume that the Constitutional Convention of 1912, when it came to consider the subject of taxation and exemption therefrom,- had before it the language of the Constitution of 1851, relative to that subject, and that the convention was familiar with the construction placed upon that exemption provision by this court. When the convention of 1912 made no change in the kinds and classes of real property which the General Assembly was authorized to exempt, it follows that it was intended that the provision as it ap
 
 *352
 
 plied to real property should mean what it meant when it was adopted originally in 1851.
 

 In order to determine what was meant by that language, we must turn to the condition of things at the time the Constitution of 1851 was framed. What in the light of conditions at that time did the framers of the language intend should be exempt? It is quite evident that modern notions as to the extent to which the functions of government might be carried, then had no existence in the minds of the people.
 

 The Constitution is a written instrument and its meaning does not change. That which it meant when adopted, it means now. Those things which are within its grants of power, as the grants were understood when made, are still within them and those things not then within them remain still excluded. It can hardly be supposed that municipal ownership and operation of swimming pools, golf courses, transit systems, airports or the like were within the contemplation of the makers of the Constitution in 1851 or in the minds of the people who adopted that Constitution.
 

 It is generally recognized that the powers and functions of municipal corporations are divided into two classes: (1) Public or governmental, and (2) private or proprietary. See
 
 City of Cincinnati
 
 v.
 
 Cameron,
 
 33 Ohio St., 336, and
 
 City of Akron
 
 v.
 
 Butler,
 
 108 Ohio St., 122, 140 N. E., 324. It is equally well recognized that municipally owned property used in the performance of a governmental function is ordinarily relieved from taxation either by express constitutional or statutory provision, and that such property when used in carrying on a private or proprietary function for profit is usually required to contribute its proportionate share of the cost of government.
 

 In 37 Cyc., 877, the rule is stated thus:
 

 “There is no implied exemption from taxation of property owned by a municipal corporation, but which
 
 *353
 
 is not devoted to public or governmental uses, but held by the municipality in its private or commercial capacity and as a source of profit or to serve some mere convenience of the citizens.” See, also,. 61 Corpus Juris, 420, and cases cited, and 3 A. L. R., 1439.
 

 When the framers of the Constitution of 1851 used the language, “used exclusively for any public purpose,” we feel quite sure that it was not intended that public property held and used for a purely private purpose and for private gain should be granted exemption from taxation. This conclusion is fortified by the language found in a unanimous decision of this court in
 
 City of Cincinnati
 
 v.
 
 Lewis, Aud.,
 
 66 Ohio St., 49, at page 56, 63 N. E., 588, wherein it is said:
 

 “The description of municipal property which is exempt from taxation indicates with unmistakable accuracy that the exemption is to extend to such property only as is actually employed in the exercise of municipal functions. If this conclusion were doubtful it would nevertheless be required by the established rule that all exemptions from taxation are to be strictly construed.”
 

 It must be admitted that there is considerable conflict in the authorities as to what is a governmental and what is a proprietary function. However in the final analysis we must find the answer to our problem in the Ohio Constitution as construed by the decisions of this court. Unfortiinately the decisions of this court have departed at times from the principles announced in the
 
 Lewis case.
 

 In the case of
 
 Butler, a Taxpayer,
 
 v.
 
 Karb, Mayor,
 
 96 Ohio St., 472, 117 N. E., 953, in considering the operation of a municipal electric light plant it was held:
 

 “Municipalities of the state are authorized to establish, maintain and operate lighting, power and heating plants and furnish the municipality and the inhabitants thereof light, power and heat. The powers thus
 
 *354
 
 conferred are proprietary in their character and in the management and operation of such plant municipal officials are permitted wide discretion. * * *”
 

 And at page 483 it is said:
 

 “We think it must be conceded that the city, acting in a proprietary capacity, may exercise its powers as would an individual or private corporation.”
 

 In the case of
 
 Akron
 
 v.
 
 Butler, supra,
 
 is found the following excellent statement of the distinction between governmental and proprietary functions.
 

 “This court has always, as indeed have courts generally, recognized the theory that municipalities have dual powers,
 
 the one ivherein they exercise the power delegated by the sovereign to preserve the peace and to protect persons and property, and the other where they exercise power, proprietary in its nature, and ivhich relates to the development of the municipality as distinguished from the commonwealth.”
 
 (Italics ours.)
 

 In the case of
 
 Travelers Ins. Co. of Hartford, Conn., v. Village of Wadsworth,
 
 109 Ohio St., 440, 142 N. E., 900, 33 A. L. R., 711, it is said:
 

 “The power to establish, maintain, and operate a municipal light and power plant, under the Constitution and statutes aforesaid, is a proprietary power, and in the absence of specific prohibition, the city acting in a proprietary capacity may exercise its powers as would an individual or private corporation.” See
 
 Western Reserve Steel Co.
 
 v.
 
 Village of Cuyahoga Heights,
 
 118 Ohio St., 544, 161 N. E., 920;
 
 State, ex rel. White,
 
 v.
 
 City of Cleveland,
 
 125 Ohio St., 230, 181 N. E., 24, 86 A. L. R., 1172;
 
 City of Barberton v. Miksch,
 
 128 Ohio St., 169, 190 N. E., 387; and
 
 City of Niles
 
 v.
 
 Union Ice Corp.,
 
 133 Ohio St., 169, 12 N E (2d), 483.
 

 In
 
 State, ex rel. Forchheimer,
 
 v.
 
 LeBlond et al., Judges,
 
 108 Ohio St., 41, 140 N. E., 491, the court was
 
 *355
 
 considering a municipally owned transportation system and held:
 

 “A municipal corporation in Ohio owning and operating a railroad under general legislative authority enacted since the adoption of the Constitution of 1851 acts in the performance of a private or proprietary function, and is subject to the same rules and entitled to the same constitutional protection as a private corporation.”
 

 Again in
 
 Cleveland Ry. Co.
 
 v.
 
 Village of North Olm
 
 sted, 130 Ohio St., 144, 198 N. E., 41, 101 A. L. R., 426, it was held:
 

 “A municipality operating a bus line by favor of Sections 4 and 6, Article XVIII, Constitution of Ohio, is engaged in a private or proprietary undertaking, and when such transportation service enters the territorial limits of another municipality, it is subject to the reasonable police regulations of the latter.”
 

 At page 148, Judge Zimmerman said:
 

 “Assuming the constitutional right of defendant in error to operate its bus line on the existing, basis, in doing so it acts in a private or proprietary capacity.”
 

 From what has been said we conclude that in the ownership and operation of a transit system a municipality is engaged in a private or proprietary function. If the general rule as stated in Cyc. and Corpus Juris were applied that would make an end to this phase of the case, but in Ohio that general rule has not been always followed.
 

 In the decisions of this court there has been no deviation from the conclusion that a municipality in the operation of a public utility, whether it be a light and power plant, a waterworks, a railroad, a bus line or an airport, is engaged in a proprietary and not a governmental function (see
 
 Frederick, Admx.,
 
 v.
 
 City of Columbus,
 
 58 Ohio St., 538, 51 N. E., 52;
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E.,
 
 *356
 
 210, 52 A. L. R., 518; and
 
 City of Portsmouth
 
 v.
 
 Mitchell Mfg. Co.,
 
 113 Ohio St., 250, 148 N. E., 846, 43 A. L. R., 961), yet light and power plants, waterworks, and airports when municipally owned and operated have been held exempt from taxation. Therein lies the conflict between the general rule and the Ohio cases.
 

 If this were a case of first impression I would hold that the General Assembly is without power to exempt
 
 any public properly
 
 (real property) from taxation unless such property is used
 
 exclusively for a governmental purpose;
 
 and that the ownership or operation of any public utility operated to preserve the peace or for the protection of the person or property of the citizens is the exercise of a governmental function and such property could be exempted from taxation, while the ownership or operation by a municipality of a utility which relates only to the development of the municipality itself constitutes the exercise of a private or proprietary function and such property could not be exempt from taxation. Such holding would conform to the generally accepted rule, to the decision in
 
 Cincinnati
 
 v.
 
 Lewis, Aud., supra,
 
 and to the view expressed by Chief Justice Weygandt in
 
 Federal Public Housing Authority
 
 v.
 
 Guckenberger, Aud.,
 
 143 Ohio St., 251, 55 N. E. (2d), 265.
 

 There can be little doubt that the transportation of persons or property from place to place by means of a transit system consisting of street railways and bus lines is in no sense a governmental function and where a municipality owns or operates such a system for the convenience of the public it is engaged in a private competitive business for profit, and while such property is publicly owned it is not used exclusively for a public purpose.
 

 Public property used exclusively for any public purpose is -exempt from taxation for two reasons: (1) It is purchased and maintained by public money de
 
 *357
 
 rived from taxation and to tax such property would amount only to taking public money from one pocket and putting it into another, and (2) the product of the expenditure of tax money should not be made the subject of another tax.
 

 The property here in question was not purchased with public money. The city is in no way liable for the payment of the mortgage revenue bonds or for the maintenance of the property. If the operation of the transit system should prove to be a losing venture the only recourse of the bondholders would be to sell the property and stand any resultant loss.
 

 The great weight of authority is to the effect that where the state (or one of its political subdivisions) enters the field of private competitive business for profit it divests itself of its sovereignty
 
 pro tanto,
 
 takes on the character of a private corporation, and thereby forfeits its immunity from taxation.
 

 See
 
 Ohio
 
 v.
 
 Helvering, Commr.,
 
 292 U. S., 360, 78 L. Ed., 1307, 54 S. Ct., 725;
 
 County of Erie
 
 v.
 
 City of Erie,
 
 113 Pa., 360, 6 A., 136;
 
 County of Erie
 
 v.
 
 Commrs. of Waterworks of City of Erie,
 
 113 Pa., 368, 6 A., 138, and
 
 Negley, Sheriff,
 
 v.
 
 City of Henderson,
 
 22 Ky. Law Rep., 912, 59 S. W., 19.
 

 It is a matter of common knowledge • that in the last three years the city has collected sufficient revenue from the operation of the transit system, over and above operating expenses, to pay off almost half of the $17,500,000 purchase price. We think that is cogent evidence that the city has entered the field of private competitive business for profit.
 

 There is another test, which is often applied in order to determine whether publicly owned or operated property is being used in connection with a governmental or a proprietary function, that is whether in conducting the particular function the owner or operator is liable for the negligence of its agents and servants,
 
 *358
 
 where such negligence causes injury to the person or property of others.
 

 It is a settled rule of law that a municipality is not liable for negligence of its agents or servants while engaged in a governmental function but is liable if engaged in a proprietary function. Applying that test to the instant case little support could be found for the assertion that the city would not be liable for any injury to persons or property caused by the negligence qf its agents and servants in the operation of the transit system.
 

 By all the applicable tests it must be concluded that when the city assumed the ownership and operation of this transit system it divested itself of its sovereignty
 
 pro tanto
 
 and entered the field of private competitive business for profit; that under such a state of facts the General Assembly, under the Constitution, could not and therefore did not authorize tax exemption of the real property, used in such enterprise.
 

 The Board of Tax Appeals held that its decision was authorized by the pronouncements of this court in the case of
 
 City of Toledo
 
 v.
 
 Jenkins et al., Bd. of Tax Appeals, supra.
 
 An examination of those pronouncements fails to disclose any language which would warrant the conclusion that where a municipality enters the field of private competitive business for profit, the real property used in conducting such enterprise is exempt from taxation under any provision of the General Code. The distinction between the
 
 Toledo case
 
 and the instant case is that in the
 
 Toledo case
 
 the enterprise was not being conducted primarily for profit, the revenue feature was merely incidental while here the primary and principal object of the enterprise is profit.
 

 We have pointed out that under the Constitution the power of the General Assembly is limited to grant tax immunity to personal property only by Article I
 
 *359
 
 of the Constitution. The remaining question therefore is: Did the General Assembly by the provisions of Sections 5351 or 5356, General Code, grant such immunity to the personal property here in question? Section 5351, General Code, insofar as pertinent to this case reads as follows:
 

 “* * * and public property used for a public purpose, shall be exempt from taxation,”
 

 Before directing our attention to the specific provision of the statutes it should be brought to mind that exemptions from taxation are not favored by the law. He who claims tax exemption of property, real or personal, must show clear and indisputable authority for such exemption.
 

 In some jurisdictions this rule is not applied where publicly owned property is claimed exempt but in this state the rule is applied without respect to the identity of the claimant.
 

 The language of Section 5351, General Code, is general and can be applied, to any property whether real or personal. However, that section was passed pursuant to Section 2, Article XII of the Constitution, and is no broader than the constitutional provision upon which it is bottomed. As applied to personal property it is provided that it must be public property used for a public purpose. The public ownership and the public use must co-exist. That the property here in question is publicly owned cannot be gainsaid but whether it is used for a public purpose is quite another matter. What has been said as to the «se of the real property applies with equal force to the personal property used in connection with the operation of the transit system.
 

 Section 5356, General Code, reads as follows:
 

 “Market houses, public squares, or other public grounds of a city, village or township, houses' or halls used exclusively for public purposes or erected by taxation for such purposes, notwithstanding that parts
 
 *360
 
 thereof may be lawfully leased, and property belonging to park districts, created pursuant to the provisions of Section 2976-1
 
 et seq.,
 
 of the General Code, shall be exempt from taxation.”
 

 We are at a loss to understand the claim that this section grants tax exemption to a municipally owned transit system. A casual reading of the statute is sufficient we think-to demonstrate its inapplicability to the present situation.
 

 There is also a practical question involved and while not controlling is worthy of passing note. If this property is held to be tax exempt the loss of revenue to the county and the city school district will be transferred to the backs of the general taxpayers; on the other hand if the property is held taxable those who use the transit system will be required to bear the tax burden.
 

 If a municipality can engage in the ownership and operation of a transit system, which is a private competitive business for profit, and claim tax exemption upon the real and personal property used in connection therewith, it follows that a municipality can engage in every conceivable kind of business and likewise claim tax exemption.
 

 We conclude and hold (1) that under the Constitution the General Assembly could not and therefore did not pass any general law to exempt from taxation the real estate used in connection with the operation of this transit system, and (2) that while under the Constitution the General Assembly could, it did not exempt'from taxation the personal property so used.
 

 Therefore, the decision of the Board of Tax Appeals holding this property exempt from taxation is unlawful and should be and hereby is reversed and the case is remanded to the Board of Tax Appeals with instructions to deny the application for exemption.
 

 Decision reversed and cause remanded.
 

 
 *361
 
 Weygandt, C. J., Turner, Matthias and Hart, JJ., concur.
 

 Zimmerman and Williams, JJ., dissent.