Matthias, J.
 

 Was the decision of the board, in denying, in part, the city’s application for exemption of these parcels and in dismissing the city’s complaint against the restoration of the parcels to the tax duplicate, unreasonable or unlawful?
 

 As stated by the city, this case as presented to this court, primarily concerns the power of the General Assembly under Section 2 of Article XII of the Constitution to authorize the exemption from taxation of these parcels of real estate.
 

 We should be reminded at the outset that the principle is well established that taxation is the rule and
 
 *100
 
 exemption is the exception. There' is no presumption favorable to the exemption of property from taxation. An exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by the Constitution. 38 Ohio Jurisprudence, 852, Section 114;
 
 Wilson, Aud.,
 
 v.
 
 Licking Aerie,
 
 104 Ohio St., 137, 135 N. E., 545;
 
 Cullitan, Pros. Atty.,
 
 v.
 
 Cunningham Sanitarium,
 
 134 Ohio St., 99, 16 N. E. (2d), 205;
 
 Crown Hill Cemetery Assn.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 399, 55 N. E. (2d), 660.
 

 As will be disclosed, the city of Cleveland has been receiving income in the form of rentals from each of these premises; and the right to exemption herein claimed is based upon the provisions of Sections 5351 and 5356, General Code.
 

 Section 5351 provides as follows:
 

 “Real or personal property belonging exclusively to the state or United States, and public property used for a
 
 public purpose,
 
 shall be exempt from taxation. Real and personal property, when devoted to public use and
 
 not held for pecuniary profit,
 
 owned by any adjoining state or any political subdivision or agency of such adjoining state (which would be exempt from taxation if owned by the state of Ohio or a political subdivision or agency thereof), shall be exempt from taxation providing that such adjoining state exempts from taxation real and personal property devoted to public use and not held for pecuniary profit, owned by the state, of Ohio or any political subdivision or agency thereof (which would be exempt from taxation if owned by the adjoining state or political subdivision or agency thereof). This exemption from taxation shall not apply to such real and personal property until the current and delinquent taxes thereon have been paid.” (Emphasis ours.)
 

 Section 5356 (108 Ohio Laws, pt. 2, 1285), prior to the amendment effective October 6, 1949, read as follows:
 

 
 *101
 
 “Market houses, public squares, or other public grounds of a city, village or township, houses or halls used exclusively for
 
 public purposes
 
 or erected by taxation for such purposes,
 
 notwithstanding that parts thereof may be lawfully leased,
 
 and property belonging to park districts, created pursuant to the provisions of Section 2976-1
 
 et seq.
 
 of the General Code, shall be exempt from taxation.” (Emphasis ours.)
 

 Both of these sections were enacted under authority granted by Section 2 of Article XII of the Constitution which provides:
 

 “* * * without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt * * * public property used exclusively for any public purpose * * *.”
 

 It is to be noted that the question presented involves only a claimed exemption of public property. Unless limited by the provisions of Section 2 of Article XII of the Constitution, the exemptions sought herein are granted by the specific provisions of Section 5356, General Code (108 Ohio Laws, pt. 2, 1285), wherein the General Assembly provided that “* * * public grounds of a city, * * * houses or halls used exclusively for public purposes or erected by taxation for such purposes, notwithstanding that parts thereof may be lawfully leased, * * * shall be exempt from taxation.”
 

 It would be profitable to examine the history of the amendment of Section 2, Article XII of the state Constitution, in November 1929, effective January 1, 1931, and the objectives sought to be attained by such amendment.
 

 It should be noted that the language of the section was entirely changed. The following language was entirely deleted,
 
 ‘ ‘
 
 Laws shall be passed, taxing by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also
 
 *102
 
 all real and personal property according to its true value in money.” As changed it read, “No property, taxed according to value, shall' be taxed in excess of one and one-half percent [changed to one per cent in 1933] of its true value in money for all state and local purposes * * #,” and “land and improvements thereon shall be taxed by uniform rule according to value.”
 

 The obvious result of such change is to fix a limitation upon the levy of taxes upon real property by the state or local government. This entirely new provision definitely limited the power of the General Assembly to make an additional levy of taxes upon real estate without a vote of the people.. There was likewise removed the requirement of the taxation of personal property by uniform rule which previously existed. There was also deleted the following language, “but burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, public property used exclusively for any public purpose, and personal property, to an amount not exceeding in value five hundred dollars for each individual may, by general law, be exempted from taxation.” Instead thereof the following was added, “and without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exem.pt burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes', and public property used exclusively for any public purpose * * *.”
 

 It has been urged that this amendment of Section 2, Article XII, has conferred upon the General Assembly the same power to determine exemptions of real property from taxation as it has conferred to determine exemption of personal property from taxation; that
 
 *103
 
 is, subject only to tbe limitation of Article I of the Constitution and that nothing stated in the Constitution will justify any inference of intention to limit the meaning and effect of the words used.
 

 The purpose of the amendment, and the reasons for, and the history of its adoption, are pertinent in determining the meaning of the language used, for when the language is obscure or of doubtful meaning the court may, with propriety, recur to the history of the time when it was passed, to the attending circumstances at the time of adoption, to the cause, occasion or necessity therefor, to the imperfections to be removed or the mischief sought to be avoided and the remedy intended to be afforded. 37 Ohio Jurisprudence, 668, Section 368.
 

 This court may take judicial notice of the fact that when the amendment was adopted, in 1929, taxes levied upon real estate had become a great burden to the home owners of this state, which condition resulted, at least partially, from failure to secure the desired results from the taxation of personal property, much of which then remained in concealment. The General Assembly, in 1925, had submitted an amendment to Section 2, Article XII, which retained the uniform rule of taxation on ‘ ‘ all real estate and improvements thereon and all tangible personal property” and provided that “all moneys, credits, bonds, stocks and all other intangible property, shall be taxed as provided by law. ’ ’ That proposal was defeated at the election held in November 1925. It is to be noted that that, proposal did not attempt any change in the classes of property which might be exempted by law from taxation. In 1929, when the present amendment was adopted (except for the change made in 1933 previously noted) the joint resolution of the General Assembly for the first time in the history of the state thereby submitted a proposal which would limit the rate of taxes for
 
 *104
 
 which a levy could be made without a vote of the electors of the taxing district, for all state and local purposes to one and one-half.per cent of the true value of the property. In the 1929 proposal the remainder of the classes of property which might be exempted by law was unchanged. That amendment was adopted and became effective January 1, 1931.
 

 It is to be noted that when that proposal was submitted to the electors the General Assembly stated the change to be made in question form as follows: “Shall Article XII, Section 2 of the Constitution of the state of Ohio be amended and Article XII, Section 3 of the Constitution of the state of Ohio be repealed so as to provide for a more flexible system of taxation for the state and to protect property against excessive taxation according to value.”
 

 A consideration of the history of such amendment leads to the inescapable conclusion that the electors, by the proposed change, sought the accomplishment of two objectives: First, the reduction of the burden of real estate taxes theretofore borne by home owners, and, second, a classification of personal property and the determination of “the subjects and methods of taxation or exemption therefrom,” so that the owners of personal property would bear their proper proportion of the cost of state and local government.
 

 It is now urged that in adopting the amendment the people had a third purpose, that being to delegate to the General Assembly full power to exempt real estate from taxation, as it may from time to time decide. If that had been desired there was a very easy way that it could have been done. The deletion of all the language relative to “burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose” would have very readily accomplished that
 
 *105
 
 purpose. Even deletion of the word “exclusively” would have evidenced some purpose to increase the list of properties authorized to be exempted from taxation.
 

 The first case decided by this court, in which was involved the power of the General Assembly to grant exemption under the amendment effective January 1, 1931, was
 
 State, ex rel. Struble,
 
 v.
 
 Davis et al., Tax Comm.,
 
 132 Ohio St., 555, 9 N. E. (2d), 684, decided June 30, 1937.
 

 The first case decided by this court after such amendment became effective wherein it was declared that the right to exemption from taxation must be found in Section 2, Article XII of the Constitution, was the case of
 
 Cullitan, Pros. Atty.,
 
 v.
 
 Cunningham Sanitarium,
 
 134 Ohio St., 99, 16 N. E. (2d), 205, decided July 6, 3938. For a period of twelve years, during which many constitutional amendments have been submitted to the electors, some of which were adopted, such rule of construction has remained unchallenged except by those who have sought to secure exemption from taxation.
 

 The language now found in Section 2 of Article XTT of the Constitution, authorizing the exemption of “public property used exclusively for any public purpose,” has remained unchanged since the adoption of the Constitution in 1851. The original section provided in part that “public property used exclusively for any public purpose, and personal property, to an amount exceeding in value two hundred dollars, for each individual, may, by general laws, be exempted from taxation.”
 

 Since the adoption of the Constitution in 1851, many cases have been decided by this court in which the question was presented as to what constituted public property used exclusively for any public purpose, of which the following are illustrative:
 
 City of Cincin
 
 
 *106
 

 nati
 
 v.
 
 Lewis, Aud.,
 
 66 Ohio St., 49, 63 N. E., 588;
 
 Columbus Metropolitan Housing Authority
 
 v.
 
 Thatcher, Aud.,
 
 140 Ohio St., 38, 42 N. E. (2d), 437;
 
 Dayton Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 10, 53 N. E. (2d), 896;
 
 City of Toledo
 
 v.
 
 Jenkins et al., Board of Tax Appeals,
 
 143 Ohio St., 141, 54 N. E. (2d), 656;
 
 Federal Public Housing Authority
 
 v.
 
 Guckenberger, Aud.,
 
 143 Ohio St., 251, 55 N. E. (2d), 265;
 
 Youngstown Metropolitan Housing Authority v. Evatt, Tax Commr.,
 
 143 Ohio St., 268, 55 N. E. (2d), 122;
 
 Zangerle, Aud.,
 
 v.
 
 City of Cleveland, Division of Municipal Transportation,
 
 145 Ohio St., 347, 61 N. E. (2d), 720;
 
 Division of Conservation and Natural Resources of Ohio
 
 v.
 
 Board of Tax Appeals,
 
 149 Ohio St., 33, 77 N. E. (2d), 242.
 

 That the authority of the General Assembly to exempt public property from taxation is limited by the provisions of Section 2 of Article XII of the Constitution is established by the following cases:
 

 Youngstown Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr., supra,
 
 paragraph one of the syllabus of which reads as follows:
 

 “Section 2, Article XII of the Constitution of Ohio is a limitation upon the legislative power to enact laws exempting property from taxation; therefore the General Assembly, in the enactment of general laws for such purpose, may not exceed the limitations provided in the Constitution.”
 

 Federal Public Housing Authority
 
 v.
 
 Guckenberger, Aud., supra,
 
 paragraph one of the syllabus of which reads as follows:
 

 “Under the provisions of Section 5351, General Code, and Section 2 of Article XII of the Constitution of Ohio relating to the exemption of public property used for a public purpose, such public use must be exclusive. (Paragraph two of the syllabus in the case
 
 *107
 
 of
 
 Pfeiffer
 
 v.
 
 Jenkins,
 
 141 Ohio St., 66, approved and followed.) ”
 

 The phrase “public property used for any public purpose” does not necessarily mean used for a public benefit; that some public purpose may be served is not sufficient to constitute an exclusive public use. This court held in
 
 Dayton Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr., supra,
 
 that “a use of property to be public must be an exclusive use by the public, open to all the people on a basis of equality to such extent as the capacity of the property admits, or by.some public or quasi-public agency on behalf of the public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state and its people.”
 

 Likewise, where property is owned by a municipality but devoted to a use which is entirely proprietary in its nature, or leased to private individuals, it is no longer public property devoted exclusively to a public purpose and may not be exempted.
 

 In the case of
 
 Zangerle, Aud.,
 
 v.
 
 City of Cleveland, Division of Municipal Transportation, supra,
 
 this court held:
 

 “The Genera] Assembly has constitutional authority to exempt from taxation municipally owned real property used in the performance of a public or governmental function; but lacks constitutional authority to exempt from taxation municipally owned real property used in carrying on a private or proprietary function primarily for profit.”
 

 A similar but more recent pronouncement by this court is in the case of
 
 Division of Conservation and Natural Resources of Ohio
 
 v.
 
 Board of Tax Appeals, supra.
 
 The syllabus of that case reads:
 

 ‘ ‘ Real property owned by the state and rented by it to a private citizen, who uses it exclusively for private
 
 *108
 
 purposes, is not exempt from taxation under Section 5351, General Code.”
 

 See, also,
 
 City of Shaker Heights
 
 v.
 
 Zangerle, Aud.,
 
 148. Ohio St., 361, 74 N. E. (2d), 318.
 

 Tested by these well established rules, was the decision of the Board of Tax Appeals in this case proper?
 

 All the evidence submitted in this case was produced by the applicant, and the exhibits therein consisted of statements showing the amount of income derived from the operation of the stadium and parking lots and contracts between the city and the lessees of portions of this property.
 

 The record shows that parking lot No. 3 and parking lot No. 4, although both are publicly owned, are leased to the Lederer Terminal Warehouse Company under a five-year lease at a total rental of $28,500; that those lots are privately used as a place in which to park new automobiles when unloaded from lake carriers; and that such lots are closed to public use. The Board of Tax Appeals correctly held that such use was not exclusively for a public purpose.
 

 The facts in regard to the other parking lots are set forth in the entry of the Board of Tax Appeals as follows :
 

 “The situation respecting parking lots No. 1 and No. 2 is somewhat different. Both are open to the public for parking purposes for about 265 days of the year, but are let — whether it be called a lease or concession — to two private individuals whenever the stadium is occupied for the day, which, we are told, is about 100 days a year, for 88 and 89% of the take or rental charge to patrons at not greater than 35 cents. During the year 1948 the city of Cleveland’s share was $47,958.34. These agreements run for three years. During those 100 days of 1948 they were only open- to the public upon payment of a parking charge just as
 
 *109
 
 a privately owned parking lot would be. They were rented for a profit almost one-third of the year.”
 

 It is difficult to see how the situation in regard to these lots differs materially from that involved in parking lots Nos. 3 and 4. For a substantial part of the year in question, the lots were under the control of private individuals who were collecting rentals thereon and paying to the city a portion thereof as compensation for the use of these publicly owned premises, A substantial income was realized by the city and we agree with the conclusion of the Board of Tax Appeals that such premises were not used “exclusively for any public purpose.”
 

 The most important question presented in this appeal involves the municipal stadium of the city of Cleveland. The operative facts in regard thereto are set forth in the entry of the Board of Tax Appeals in the following language:
 

 “In 1932 the city caused the stadium to be built at a cost of around $2,500,000. It has twice been rehabilitated. The original cost and the two repair jobs were financed by the issuance and sale of general revenue bonds as distinguished from mortgage revenue bonds. Prior to the year 1948 the stadium was operated at an an annual loss of $50,000 to $100,000. The purpose to be accomplished by possession of such a structure was and is, as testified by the stadium commissioner, to provide a place for amusement for its residents and visitors ; to bring new business into the city; and, thirdly, to produce a money income. These three purposes are so related as to require the drawing of large numbers of people to Cleveland from considerable distances. Hence, it was contemplated that guests of the city from near and far were to be entertained and amused and to largely contribute towards its maintenance. Thanks to champion baseball and football teams, sue
 
 *110
 
 cess was realized in 1948. Here follow a number of figures for tbe year 1948: Total days and nights operated, 100; sixty of which were by the Cleveland Indians, eight by the Cleveland Browns. The remaining 32 were local athletic contests, civic projects, amateur contests, religious gatherings and the like. Only one use of the stadium was had without an admission charge, that being the annual Fourth of July celebration. The letting of the stadium for a day is based upon a sliding scale depending on the character of the user. It ranges from $300 to $1,200, usually taken from the day’s concession receipts. By concessions is meant articles of food and drink and the like sold to patrons. The total attendance for the year was 3,694,517. The gross income derived by the city and paid into its general fund was $571,000. The total rentals was $225,284; food concessions, $292,760; and, according to the profit and loss statement made by its stadium commissioner, it earned a net profit of $129,339.45. The Cleveland Baseball Club’s share of rentals paid amounted to $166,759.42. The Cleveland Browns’ management paid in rental a proportionate amount for its eight appearances in the stadium, to wit, $41,540.57.”
 

 An examination of the exhibit filed by the city of Cleveland, entitled “Cleveland Stadium Operating Statement, Years 1947-1948,” shows a gross profit for the year 1947 of $83,821.55, and for the year 1948 of $105,753.34. The statement shows further that, after deducting depreciation and interest on the stadium debt, net losses were incurred in the year 1947 in the sum of $42,347.23, and in the year 1948 in the sum of $14,710.44.
 

 The Board of Tax Appeals from a consideration of that exhibit concluded, as follows:
 

 “If depreciation and debt interest are properly includible, then it becomes apparent that patrons (resident and nonresident) are expected to contribute
 
 *111
 
 towards cost of construction as well as for the amusement they enjoy. It also evidences a practice pursued hy private industry conducted for profit usually not followed in management of public property. The mere fact of applicant’s claim for its inclusion in an operating statement indicates a purpose to destroy all suggestion of the stadium’s profitable operation in 1948.”'
 

 It is evident from the testimony and exhibits that the Cleveland stadium did make a substantial profit over its actual operating expenses. It is contended, however, by the city of Cleveland that, because of the recreational purpose for which the stadium is sometimes used and because it is often used by some organizations at greatly reduced rentals, its operation is in a governmental capacity and is not a proprietary activity and that it is none the less a public facility even though in the administration thereof an effort is made to have those who use it pay something toward its upkeep. Such theory would require that the determination of the question of exemption await' the calculation of profit or loss at the end of each year. Reliance is placed on the cases of
 
 College Preparatory School for Girls
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 408, 59 N. E. (2d), 142, and
 
 O’Brien, Treas.,
 
 v.
 
 Physicians Hospital Association,
 
 96 Ohio St., 1, 116 N. E., 975, L. R. A. 1917F, 741. However, the facts involved in those cases render them inapplicable here.
 

 Summarizing: When a city undertakes an enterprise which is proprietary in its nature, and thereby enters into competition with similar enterprises privately operated, its real estate used in such enterprise is not exempt from taxation.
 
 Zangerle, Aud.,
 
 v.
 
 City of Cleveland, supra,
 
 and
 
 City of Shaker Heights
 
 v.
 
 Zangerle, Aud., supra.
 

 In the exercise of a municipal function, the fact that revenue is
 
 incidentally
 
 derived from public property does not in and of itself alter the public character of
 
 *112
 
 the use.
 
 City of Toledo
 
 v.
 
 Jenkins, supra.
 
 However, the General Assembly is without authority to convert a proprietary operation into a public use; and in the construction of Sections 5351 and 5356, General Code, the limitations of Section 2 of Article XII of the Constitution must be superimposed upon the statutory provisions granting exemption. Statutory exemptions may not go beyond the limitations prescribed by the Constitution. As stated in 2 Cooley on Taxation (4 Ed.), 1382, Section 661, “generally, where the constitution enumerates the property which is or may be exempted, it is held that the
 
 legislature has no power to exempt other property than that enumerated.
 
 The lack of power to exempt may result from the express wording of the constitutional provision or be
 
 implied on the theory that the enumeration is intended to be exclusive.”
 
 (Emphasis supplied.)
 

 It is urged also that language appearing in the case of
 
 State, ex rel. Struble,
 
 v.
 
 Davis et al., Tax Comm., supra,
 
 has abrogated this limitation. Paragraphs one and two of the syllabus of that case are as follows:
 

 “1. Section 2 of Article XII of the state Constitution requires only lands and improvements thereon to be taxed by uniform rule according to value. By reason of the removal of previous constitutional limitations and restrictions, the power of the General Assembly to determine the subjects and methods of taxation and exemption of personal property therefrom is limited only by Article I of the Constitution of the state.
 

 “2. In the matter of classification of property for taxation purposes, broad power is conferred upon the Legislature. Its action in that regard will not be set aside by the courts unless the classification attempted results in such discrimination against members of the same class as to deny them the equal protection of the law.”
 

 
 *113
 
 As has been said in previous decisions of this court, the
 
 Struble case related only to the classification of personal property for taxation,
 
 as authorized by the amendment of Section 2 of Article XII of the Constitution, effective January 1, 1931. It clearly cannot apply here since we are construing a provision which has remained unchanged since the enactment of the 1851 Constitution and which has been interpreted repeatedly both before and since the 1931 amendment. See
 
 Zangerle, Aud.,
 
 v.
 
 Republic Steel Corp.,
 
 144 Ohio St., 529, 60 N. E. (2d), 170, and
 
 Zangerle, Aud.,
 
 v.
 
 City of Cleveland, supra.
 

 The Board of Appeals found:
 

 “The character and operation of the stadium is clearly not a governmental function, but a proprietary one.
 

 “ * * * At the time of construction and in 1948 operation at a profit was contemplated, intended and actually accomplished at the expense, not only of its citizens, but of thousands upon thousands of visitors. An annual gross income of $571,000 and a net of $149,000 upon an investment of $2,850,000 displays better than a
 
 5%
 
 earning for 1948, which is not bad when compared with private business earnings.
 

 “Can it be that the $292,760 income from concessions is merely incidental to operation? This is quite a sizeable amount earned in 100 days operation. It was not for amusement and entertainment that stadium patrons paid nearly $3,000 a day plus the profit which fell to concessionaires. It was even more lucrative to the city than the rentals obtained. Food and drinks did not afford amusement to patrons. Its sale did not promote or forward the stadium’s purpose. It was not necessary, as was the sale of gasoline, oil and aeronautical supplies as in the Toledo Airport case. It was more than incidental income. It was a profit anticipated and secured in competition with private
 
 *114
 
 business. It represented better than half of its 1948 gross income. It entered this field clearly for a profit. ’ ’
 

 Demands for exemption from taxation are increasing and efforts to extend the limitation upon exemption are more and more persistent. The report of the Board of Tax Appeals for the year 1949 discloses that of the 1,124 cases filed with that board during that year, 994 were cases in which exemption from taxation on real estate was sought, and that of the 1,188 cases decided by that board in 1949, 1,022 involved claims for exemption from taxation. These figures, of course, do not include the numerous tax exemptions granted annually without renewed applications therefor.
 

 Construing Section 2, Article XII as amended, giving due consideration to the obvious purposes of the change made by the amendment, effective January 1, 1931, we hold that there no definite intention is manifested to grant to the General Assembly unlimited power to exempt any and all property from taxation; that the retention of the enumerated list of exemptions authorized to be granted by the General Assembly precludes the granting'of any further exemptions, and that under the well established rule set forth in Section 20, Article 1 of the Constitution, that “ enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people,” the right to determine what institution or property may be exempted remains with the people. If it be desired to further relax the limitations upon exemptions of property from taxation it should be done in the appropriate manner.
 

 It should ever be borne in mind that tax revenues are essential to the maintenance of governmental functions, and that revenues lost by reason of exemption of property from taxation must be provided by increased taxes upon nonexempt property.
 

 
 *115
 
 It seems clear that there was ample evidence before the Board of Tax Appeals to support its finding and decision. That decision is neither unreasonable nor unlawful, and is, therefore, in all particulars affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Hart and Turner, JJ., concur.
 

 Zimmerman, J., concurs in paragraph one of the syllabus but dissents from the judgment.
 

 Stewart and Taft, JJ., dissent.