GRAF, APPELLANT, *v.* WARREN, AUD.; STATE UNDERGROUND
PARKING COMMISSION, APPELLEE.

[Cite as Graf v. Warren, Aud., 10 Ohio St. 2d 32.]

(No. 40352—Decided March 29, 1967.)

"* * *

*Messrs. Lucas, Prendergast, Albright & Warren* and *Mr. Rankin M. Gibson,* for appellant.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Arthur 1. Vorys, Mr. Colburn M. Addison, Messrs. Squire, Sanders & Dempsey, Mr. James C. Davis* and *Mr. Ralph H. Gibbon,* for appellee.

TAFT, C. J. Appellant advances only two reasons for reversal of the decision appealed from:

(1) That the decision is contrary to Section 2, Article XII of the Ohio Constitution, because the Statehouse Underground Parking Facility is not used exclusively for public purposes, and

(2) That the decision is arbitrary and discriminatory and thus deprives appellant of the equal protection of the laws contrary to Section 2 of Article I of the Ohio Constitution and contrary to the Fourteenth Amendment of the United States Constitution.

As to the first reason, this court stated in the syllabus of *State, ex rel. Gordon, City Atty.,* v. *Rhodes, Mayor* (1951), 156 Ohio St. 81, 100 N. E. 2d 225:

"1. Under the home-rule amendments to the Constitution of Ohio * * * an Ohio municipality, which has not adopted a charter provision to the contrary, has the power to acquire, maintain, and operate off-street facilities for the sole purpose of parking motor vehicles if the traffic conditions in such municipality are such as to warrant a determination by the legislative body of the municipality that the operation of such off-street parking facilities is necessary and that they will serve a public municipal purpose.

"2. The determination of what constitutes a public municipal purpose is primarily a function of the legislative body of the municipality, subject to review by the courts, and such determination by the legislative body will not be overruled by the courts except in instances where that determination is manifestly arbitrary or unreasonable."

In the opinion by Middleton, J., it is stated at page 97:

"It is our conclusion that conditions in a city may be such as to necessitate the furnishing of off-street parking facilities by a municipality and that the furnishing of the same, under such circumstances, would constitute the performance of a public municipal function. The congestion in downtown areas of large cities and the difficulty of operating vehicles through the streets are matters of such common knowledge as to come within the scope of judicial notice."

In view of this decision, we conclude that we must sustain the determination in effect made by the General Assembly, especially in Sections 5538.23 and 5538.39, Revised Code, that an underground parking facility, constructed and operated pursuant to Sections 5538.22 to 5538.43, inclusive, of the Revised Code, is used exclusively for public purposes within the meaning of the words, "public purpose," in Section 2, Article XII of the Ohio Constitution, and in statutes providing for tax exemption..

Between 1945 and 1956, this court did hold that a public purpose of a proprietary nature was not a "public purpose" within the meaning of those words as used in Section 2, Article XII of the Ohio Constitution, and in statutes providing for tax exemption. *Zangerle, Aud.,* v. *Cleveland* (1945), 145 Ohio St. 347, 61 N. E. 2d 720, and *Cleveland* v. *Board of Tax Appeals* (1950), 153 Ohio St. 97, 91 N. E. 2d 480.

However, in *Columbus* v. *County of Delaware* (1956), 164 Ohio St. 605, 132 N. E. 2d 747, this court questioned and distinguished those cases and held (paragraph three of the syllabus) that "a public purpose of a proprietary nature is still a public purpose within the meaning of" those words as used in Section 2 of Article XII of the Ohio Constitution and of tax exemption statutes; and in *Cleveland* v. *Board of Tax Appeals*

(1958), 167 Ohio St. 263, 147 N. E. 2d 663, the *Zangerle case* was expressly overruled.

Appellant in the instant case relies upon paragraph five of the sylabus of *Cleveland* v. *Board of Tax Appeals, supra* (153 Ohio St. 97), as a part of that case which has not been overruled. The opinion in that case (pages 107, 108 and 111) indicates that paragraph five of the syllabus was based upon the overruled *Zangerle case*. It is inconsistent with the later case of *Cleveland* v. *Carney, Aud.* (1961), 172 Ohio St. 189, 174 N. E. 2d 254, which approved tax exemption for the Cleveland Auditorium. In the latter case, at page 193, it is stated in the opinion by Bell, J.:

"* * * in * * * *Cleveland* v. *Board of Tax Appeals* * * * the court held * * * a stadium * * *leased* to private persons for their use and profit * * * not exempt." (Emphasis added.)

Where property has been leased to private owners for their use, it is no longer public property within the meaning of tax exemption statutes. *Carney, Aud., v. Cleveland* (1962), 173 Ohio St. 56, 180 N. E. 2d 14; *Cleveland v. Perk, Aud.* (1965), 2 Ohio St. 2d 173, 207 N. E. 2d 556.

Furthermore, as appellant recognizes, this court held in *Denison University* v. *Board of Tax Appeals* (1965), 2 Ohio St. 2d 17, 205 N. E. 2d 896, that (paragraph three of the syllabus) "by reason of the amendment of Section 2 of Article XII of the Ohio Constitution effective in 1931 the General Assembly now has a power to determine exemptions from taxation that is limited only by the provisions of Article I of the Ohio Constitution."

Unlike in *Columbus* v. *County of Franklin* (1958), 167 Ohio St. 256, 147 N. E. 2d 625; *Cleveland* v. *Carney, Aud.* (1958), 168 Ohio St. 305, 154 N. E. 2d 752; and *Cincinnati* v. *Bowers, Tax Commr.* (1964), 176 Ohio St. 110, 198 N. E. 2d 78, where tax exemption was denied to municipal off-street parking facilities because of the general provision against exemption of such facilities in Section 717.05, Revised Code, there is a statute (Section 5538.39) which specifically exempts from taxation a facility such as the Statehouse Underground Parking Facility.

Appellant's second contention is that the granting of tax

exemption to the Statehouse Underground Parking Facility in effect is proscribed by the provisions of Section 2, Article I of the Ohio Constitution, that "government is instituted for * * * [the] equal protection and benefit" of "the people" and by the provisions of the Fourteenth Amendment to the United States Constitution that "no state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Similar contentions were made and rejected in *Puget Sound Power & Light Co.* v. *Seattle* (1934), 291 U. S. 619, 78 L. Ed. 1025, 54 S. Ct. 542. There, the city of Seattle imposed an annual tax of 3% of gross income from the business of selling electric light and power in the city. The appellant and the city were actively competing in that business. As to the city's power and light business, the opinion of the court discloses that "bonds have been issued in excess of $30 million dollars against the revenues from that business; and those bonds are a prior lien on the entire income from it—taking precedence even over operating charges." In the opinion of the court by Mr. Justice Stone, at pages 622, 624 and 625, it is said:

"* * * appellant argues that the taxation of its competing business is a denial of equal protection * * *. * * * the equal protection clause does not forbid discrimination with respect to things that are different. The distinctions between the taxing sovereign and its taxpayers are many and obvious. The private corporation, whatever its public duties, carries on its business for private profit and is subject to the obligation, common to all, to contribute to the expense of government by paying taxes. The municipality, which is enabled to function only because it is a tax gatherer, may acquire property or conduct a business in the interest of the public welfare, and its gains if any must be used for public ends. Hence, equal protection does not require a city to abstain from taxing the business of a corporation organized for profit merely because in the public interest a muncipality has acquired like property or conducts a like business.

"These differences are not lessened nor the constitutional exaction of uniformity increased because the city competes with a business which it taxes. * * * These considerations are in no

way affected by calling the city's activity 'proprietary' instead of 'governmental.' "

Of course, the General Assembly may not discriminate against members of the same class by denying some members of the class a tax exemption given to others. *Kroger Co. v. Schneider, Tax Commr.*, 9 Ohio St. 2d 80. However, the General Assembly has a wide discretion in finding distinctions that will justify classifications. *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N. E. 24. In the field of tax exemptions, this wide discretion is illustrated by *State, ex rel. Struble, v. Davis et al., Tax Comm.* (1937), 132 Ohio St. 555, 9 N. E. 2d 684, sustaining a tax exemption for interurban railroads even though they competed with steam railroads and operators of highway transportation facilities, and by *State, ex rel. Brunenkant, v. Wallace, Registrar* (1940), 137 Ohio St. 379, 30 N. E. 2d 696, authorizing exemption of trackless trolley busses from a license tax levied upon motor driven busses although such trackless trolley busses were competing with the taxed motor driven busses.

The state does not have an unlimited right to use property. It may acquire and use property only for a public purpose. But, where it has acquired and is using property for public purposes, either for itself or through one of its instrumentalities, such property may lawfully be exempted from taxation, even though such use may compete with the use of private property for the same purposes.

It has been suggested, although not by appellant, that the State Underground Parking Garage is not now being used exclusively for public purposes, because it is being used to provide revenues, all of which are used, after payment of expenses of operation, to pay interest on bonds and to retire bonds held by private investors.

Until the bonds are retired, none of the revenues from operation of the garage will go to the state. It is therefore argued that there is not an exclusive use for public purposes at this time.

This court has previously held that, where revenue bonds are issued to provide the funds necessary to acquire property for the state, such state-owned property may be exempted from

taxation if used for public purposes, even though all the net income therefrom is used to pay interest on and retire the principal of those bonds and even though those bonds are owned by private investors. *Stratton et al., Board of County Commrs., v. Board of Tax Appeals* (1961), 172 Ohio St. 219, 174 N. E. 2d 545 (toll bridge purchased with funds provided by sale of revenue bonds); *Carney, Aud., v. Ohio Turnpike Commission* (1958), 167 Ohio St. 273, 147 N. E. 2d 857 (all of turnpike property acquired with funds provided by sale of revenue bonds).

It may be observed that, if revenues from the State Underground Parking Garage were used to pay taxes and thus diverted from payment of interest on and retirement of the revenue bonds which were sold to provide funds for construction of the garage, there would be an inevitable postponement of the time when all bonds are paid off and net revenues are paid into the state treasury, and there would be an increase in the amount of the interest to be paid on those bonds because of the delay in the time of their complete retirement.

For the foregoing reasons the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

Zimmerman, Matthias, O'Neill, Schneider and Brown, JJ., concur.

Herbert, J., dissenting. I am unable to concur in the judgment entered in this cause and will state some of my reasons for taking this position.

The General Assembly may exercise the power conferred upon it and in addition: "and without limiting the general power, subject to the provisions of Article I of the Constitution, to determine the subjects and methods of *taxation or exemptions therefrom*, general laws may be passed to exempt * * * *public property used exclusively for any public purposes*." Section 2, Article XII of the Constitution of Ohio. (Emphasis added.)

The method or guidelines used to determine whether *to tax*, or *to exempt* from taxation, should be the same when applied to

public property of the state or public property of a municipality. If such state property is exempt then such municipal property should be exempt. If one is taxed then the other, likewise, should be taxed.

Section 717.05 of the Revised Code specifically *denied tax exemption* to municipal off-street parking facilities, even though such facilities were on *public property and were used exclusively for a public purpose*, but Section 5709.08 of the Revised Code generally *exempts from taxation any property* of a municipality *used exclusively for public purposes*.

In 1961 the General Assembly enacted Sections 5538.22 to 5538.43 of the Revised Code inaugurating a plan to construct a series of underground parking facilities throughout the state, the first being "Project No. 1" now in operation underground on three sides of the Statehouse. This legislation not only exempts the facility or facilities from taxation but provides that the land be used without cost.

In 1954, the Council of the City of Columbus enacted legislation providing for the acquiring of real estate, and the building thereon of an off-street parking facility. Pursuant to this authorization by the city council, real estate was acquired and an off-street parking facility was constructed to be used solely for *public purposes*. In 1956, the city made application to the Board of Tax Appeals to exempt its parking facility from taxation under the provisions of Section 5709.08 of the Revised Code. The Board of Tax Appeals held that it was "the general legislative intent that off-street parking facilities *should not be tax exempt*," and denied the application.

Appeal was taken to this court in the case of *Columbus* v. *County of Franklin*, 167 Ohio St. 256. A unanimous court, in the opinion, at page 260, said:

"There is no question that the property involved here is *public property used for a public purpose* * * *." (Emphasis added.) Nevertheless, the court affirmed the decision of the Board of Tax Appeals on the basis of Section 717.05 of the Revised Code.

The Columbus off-street parking facility is on public property and is used exclusively for a public purpose. The same is true of the state parking facility, yet the city property is taxed

and the state property is exempt.* This is arbitrary, unreasonable and unfair discrimination.

Section 2 of Article XII of the Ohio Constitution provides further that "land and improvements thereon shall be taxed by uniform rule according to value." Taxing one facility and exempting the other violates this constitutional rule of uniformity so long respected.

The private off-street parking industry faces statewide competition. The private owner must acquire land upon which to construct his facility. This is a heavy expense. The state furnishes the land free for its parking facility. The private owner must pay heavy taxes. The state-owned facility is free of this burden.

Section 1, Article I of the Constitution of Ohio, is a protection against unfair competition from the state when it provides that:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property * * *."

Section 2, Article I of the Constitution of Ohio, provides, in part, that:

"All political power is inherent in the people. Government is instituted *for their equal protection and benefit * * *.*"

The history of government proves the old axiom: "The power to tax is the power to destroy."

That portion of Section 5538.39 of the Revised Code granting tax exemption to state parking facilities is contrary to the Constitution of Ohio.

The decision of the Board of Tax Appeals should be reversed and the application for exemption from taxation should be denied.

---

*The city of Columbus pays approximately $13,000 in taxes annually upon its off-street parking facility. The tax upon the Statehouse facility would be $95,600 each year. This sum would go into the treasury of Franklin County to be distributed largely to the schools, the city of Columbus and the county government.