STATE OF FLORIDA *ex rel.* PHILIP GRUBSTEIN v. W. H. CAMPBELL, as Assessor of Taxes for the City of Tampa, a Municipal Corporation, and the HOUSING AUTHORITY OF THE CITY OF TAMPA, FLORIDA, a Public Body Corporate and Politic.

1 So. (2nd) 483

Opinion Filed April 4, 1941

*Frank P. Ingram,* for Plaintiff in Error;

*Alonzo B. McMullen* and *Ralph A. Marsicano,* for Defendant in Error;

*Thomas A. Dyer,* Attorney for The Housing Authority of the City of Tampa, Florida, Defendant in Error.

TERRELL, J.—Alternative writ of mandamus was directed from the Circuit Court of Hillsborough County to the Tax Assessor and the Housing Authority of the City of Tampa commanding that all lands described therein and belonging to the latter be entered on the tax rolls and assessed for taxes in like manner as taxes are imposed on relator and other property owners in the city. Returns were duly filed and a stipulation as to essential facts was entered by counsel. Motion for peremptory writ of mandamus was overruled and relator announcing that he did not desire to plead further, the alternative writ was quashed, the cause was dismissed and final judgment was entered for Respondents. The case is here on writ of error to the final judgment.

The first question presented is whether or not the property of Respondent, Housing Authority of the City of Tampa, created under Chapter 17981, Acts of 1937, and used exclusively for the purposes therein provided is exempt from taxation under Section 1, Article IX, and Section 16, Article XVI, of the Constitution of Florida.

A similar question was presented and answered fully in State *ex rel.* Harper v. McDavid (Fla.), 200 So. 100, decided January 7, 1941. We do not deem it necessary to say more than cite the latter case in answer to this question.

It is next contended that even if Chapter 17983, Acts of 1937, may legally exempt the properties of housing authorities from taxation as contemplated by Section 1 of Article IX, and Section 16 of Article XVI of the Constitution, such properties would nevertheless be subject to taxation for the payment of the principal and interest of bonds and other obligations incurred prior to the effective date of said Act.

We don't think there is any merit in this contention. The exemptions provided for in Section 1 of Article IX and Section 16 of Article XVI have been in effect since 1868 and in so far as this case is concerned, are limited to municipal purposes. All purchasers of securities of the City were on notice of these provisions of the Constitution and the exemptions they provided and purchased with knowledge thereof. They are not now in position to complain.

We are urged in *amici curae* brief signed by counsel for numerous other housing authorities to prescribe a standard by which taxing officials may know when and under what circumstances to allow the exemption provided by Chapter 17983.

In answer to this question, it is sufficient to say that Chapter 17981, Acts of 1937, as amended by Chapter 19510, Acts of 1939, provides the only standard we would be

authorized to approve for the governance of taxing officials. As we construe Section 2 (a), (b) and (c), Section 3 (h) and (1) and paragraph 2, Section 4, of the Housing Authority Act, it authorizes housing projects in slum areas or in areas where there is a shortage of accommodations for those of low income as defined by the Act. The project may not necessarily occupy the identical area occupied by the slum but the purpose and result must be the clearance of the slum area. The theory of the Act is that such areas become the breeding places of disease and crime, a menace to the health, safety, morals, and welfare of the State and that such conditions require a disproportionate expenditure to preserve the public health and to prevent crime, fire, accident, and for other services furnished by the public. The Act further declares that the clearance of such areas is one that does not attract private enterprise, that it is a duty devolving on the public and one for which public expenditure may be made.

Such is the criterion prescribed by the Legislature as a predicate for the play of the Housing Act. If the Housing Authority attempts to promulgate a housing project devoid of these elements or for any other reason not specified in the Act, it may be intercepted by court action but not otherwise. Every project must stand on its own facts but when acquired and put in operation, the taxing officials should allow the exemption.

In this holding, we are not unmindful of the charge of inequality of taxation, lack of due process, equal protection, and competition with private enterprise that housing projects give rise to. The encouragement of private enterprise has been one of the greatest factors in the rise of this country to its present social and economic greatness, but it is not a fact that the slum area with the vices recited has been one of the by-products of private enterprise. When the Con-

stitution was adopted, more than nine-tenths of the people were engaged in agricultural pursuits and knew nothing of the slum but on account of industrial expansion, thousands were induced to migrate to the urban centers where they became settlers and because of the rise in the cost of living unaccompanied by a corresponding rise in wages on the one hand, and a sheer lack of what it takes to rise from that environment on the other, they are caught in an economic straightjacket from which they are unable to extricate themselves.

The man in the slums is too often a victim of the social and economic system that private enterprise has fostered. When he gets hungry and sees his dependents going without the dire necessities because of the system in which he is entrapped, he easily becomes a fertile source to generate crime and political isms adverse to democracy. Hurrahs for justice and equality become empty cymbals when those on one block are basking in luxury and those on the next block are cramped by destitution. To contend that democratic society can not relieve against the evils of its own creation is to admit that it has become lost in anachronisms and can't respond to the demand made on it.

If they are to be more than frozen abstractions constitutional limitations must expand to meet the exigencies of the present. In doing this, it may be that private enterprise will have to depart from its traditional policy but that is no reason to halt a project like that under review when undertaken to relieve a strain on the social structure. Upheavals in the social anatomy produced by labor-saving devices and science are eternally reshaping the life of individuals and institutions. To the charge of lack of due process and equal protection, it is sufficient answer to say that while the lands of housing authorities go on the tax books relieved of taxation, little is actually lost because

they were assessed low in the first place and what is lost in taxes is more than compensated for by saving in improved sanitation, and reduction in the cost of crime and policing.

The briefs in this case are splendid. We particularly commend the brief of the City of Tampa. It is concise and lucid, devoid of a single surplus sentence and is a model of its type.

The judgment below was without error and is affirmed.

Affirmed.

WHITFIELD, BUFORD and THOMAS, J. J., concur.

BROWN, C. J., and CHAPMAN, J., agree to conclusion.

ADAMS, J., not participating.