CLARK, APPELLEE, *v.* CITY OF CINCINNATI ET AL., APPELLANTS.

(No. 7960—Decided October 11, 1954.)

*Mr. James R. Clark* and *Mr. Burton E. Robinson,* for appellee.

*Mr. Henry M. Bruestle,* city solicitor, *Mr. James W. Farrell, Jr.,* and *Mr. Edgar W. Holtz,* for appellants.

MATTHEWS, P. J. The plaintiff is an attorney at law, practicing his profession in the city of Cincinnati, Ohio, and filed this action on behalf of himself and all others similarly situated, whom he alleged were so numerous that it was impracticable to bring them all before the court. The defendants are the city of Cincinnati and its commissioner, whose duties were to administer and enforce the provisions of an ordinance purporting to impose an earned income tax. This action challenges the constitutionality of the ordinance, and the plaintiff's prayer is that the tax imposed upon him and others similarly situated be declared discriminatory and void, and its collection enjoined.

The Court of Common Pleas on the issues made found in favor of the plaintiff to the extent that it enjoined the defendants from levying or collecting any amount in excess of one per cent of their net earnings for the months April 1, 1954, to October 31, 1954, both inclusive.

From that judgment, the defendants appealed on questions of law and fact to this court. At the trial in this court, it developed that there is substantially no dispute as to the facts.

In the preamble of this ordinance, it is recited that the purpose was to levy a tax "to provide funds for general municipal operations during 1954, and to provide for the administration, collection and enforcement of the tax, and to declare violations thereof to be misdemeanors and imposing penalties."

The first section is confined to ordaining the definition of terms used. By the second section, it is ordained that there should be and was levied a tax at the rate of one per cent upon compensation and net profits received by residents of Cincinnati or by nonresidents upon activities performed within the city of Cincinnati. The only exception was in favor of nonprofit organizations exempt from federal income tax.

By section 3 of the ordinance, the tax was limited to com-

pensation and net profits received during the period from April 1, 1954, to October 31, 1954, both inclusive, but it was provided that "a taxpayer whose fiscal year is the same as the calendar year shall pay the tax on seven-twelfths of the net profits for the year," and that a taxpayer whose fiscal year differed from the calendar year should pay a tax on the net profits determined by the ratio which that portion of the operative time of the ordinance bore to the entire fiscal year of which it was a part.

Section 3 creates two classes of taxpayers. It manifests an intent to impose an equal burden on the members of the two classes; but this is denied, and it is asserted that it fails to accomplish that result, and, also, that it creates inequalities of burdens within each class. Certain hypothetical inequalities have been mentioned. The contention is that the classification has no reasonable basis, is arbitrary and capricious, results in discrimination, and violates the Fourteenth Amendment to the Constitution of the United States and Section 2 of Article I of the Constitution of the State of Ohio. In other words, the claim is that the plaintiff and others similarly situated are denied the equal protection of the law.

On the other hand, defendants contend that on its face the ordinance discloses a palpable attempt to equalize the burden of the tax and that the classification is the only possible one to accomplish that result. In this connection, counsel point out that net profits are not and cannot be determined from day to day, or even from month to month, that they are unstable and fluctuating, and that it is the usual practice to make the calculation at the end of the calendar or fiscal year; and that because of the long pendency of the fruition of many transactions from which net profits may or may not be realized it would be difficult, if not impossible, to make a calculation of net profits during the months of April to October, both inclusive, without, at least, disturbing the time honored practice of those engaged in business and professional enterprises, and engaging in unnecessary speculation as to the ultimate result of many business transactions.

In deciding between these contentions, we must keep in mind that we are confronted with an exercise of the taxing power to secure funds to defray the expense of operating the

government generally. It is not an instance of regulatory legislation under the police power accompanied by a tax or license fee. It is not a tax imposed to discourage one activity and encourage another by burdening one and not the other. The only object is to raise revenue to conduct the established legitimate business of the municipality.

Where a court is confronted with the task of determining the constitutionality of substantive legislation, that is, regulatory legislation under the police power, before it can declare the law constitutional, it must be found that it conforms to both the "Due Process" clauses as well as the "Equal Protection" clauses of the federal and state Constitutions. To conform to the "Due Process" clause, it must be a valid exercise of the police power, that is, the purpose must have some reasonable relation to the public health, public morals, public safety, the general welfare or general prosperity, or in other words, the purpose to be accomplished must be a just object of government. When it is found that the purpose comes within the police power, it still remains to be determined whether the method employed conforms to the "Equal Protection" clause. The purpose may be a proper object of government, and still the particular legislation may be fatally defective because of its arbitrary and discriminatory nature. The classification may lack a reasonable basis, thereby resulting in persons similarly situated being treated differently.

The "Due Process" clause is irrelevant to this inquiry. A tax law is per se due process. The ordinance is a revenue measure solely. Its only object was to raise revenue. That the council had power to tax to raise revenue to pay the operating expense of the municipal government cannot be disputed. The only question is whether the method employed conforms to its power under the constitutional provisions guaranteeing all persons the equal protection of the law. This singleness of purpose of a tax measure is pointed out in 51 American Jurisprudence, 238, Section 177, where it is said in the text:

"It has been said, however, that the rule that legislative classifications must rest upon some ground of difference having a fair and substantial relation to the object of the legislation does not require that the classification made by a taxing statute

or ordinance be related to the purpose for which the proceeds of the tax are to be spent."

And, in a footnote it is said:

"By 'object of the legislation' within the meaning of the text rule is meant merely the raising of revenue, and it is consequently not necessary that the classification in a tax statute bear any reasonable relationship to the specific purpose for which the funds to be raised by the statute are to be appropriated."

The equal protection of the law does not require that all taxes shall be imposed upon all persons within the territorial limits of the municipality. It does not exclude classification and the imposition of a tax upon the members of that class. The only requirement of uniformity is that the law shall operate equally upon all similarly situated. And where the law is confined to the raising of revenue, the power to classify is broader than it is in relation to other legislation. This results, as already pointed out, from the inapplicability of the "Due Process" clause. In 51 American Jurisprudence, 233, Section 174, it is said on this subject:

"The power to make classifications with respect to taxation is with the Legislature in the first instance, and its discretion in the matter is very broad and covers a wide range. In this connection it has been variously said that in taxation there is a broader power of classification than in some other exercises of legislation, that it is not necessary that the basis of a classification of property for tax purposes be deducible from the nature of things classified, and that the Legislature, in classifying subjects for taxation, cannot be required to state the grounds of the classification."

In choosing the objects and persons to be taxed, there is always a certain discrimination between the taxed class and those that are not taxed. Such discrimination does not affect the validity of the tax. It is only when those similarly situated are unequally burdened that the constitutional provision requiring equal protection is violated.

That the constitutional provision does not require exact uniformity and equality even within the class is pointed out in bold type in 84 Corpus Juris Secundum, 82, Section 23b, where it is said:

"Absolute or perfect equality and uniformity in taxation, being impossible of attainment, is not required, and as long as there is substantial uniformity in the application of taxing statutes, the constitutional provisions relating to equality and uniformity are not violated."

And administrative convenience and expense in the collection or measurement of the tax may be a valid ground for exclusion from the taxed class. 51 American Jurisprudence, 522, Section 520. Placing those excluded from one class, and placing all such of those similarly situated in another class, would seem to be an effort to enforce the rule of uniformity rather than to violate it.

Nor does mere difference in method of assessment constitute a discriminaton or deny equal protection. *Charleston Federal Sav. & Loan Assn.* v. *Alderson, Commr.*, 324 U. S., 182, 89 L. Ed., 857, 65 S. Ct., 624.

It has also been said that the establishment of a class for taxation does not preclude the division of that class into subclasses based upon some reasonable distinction not found in all the members of the larger class. 51 American Jurisprudence, 240, Section 180.

Let us analyze the provisions of this ordinance in the light of these constitutional principles. We find that the subject matter of the tax is earned income, and it is manifest that it was the purpose of the taxing authority to impose the tax upon every form of earned income by whomsoever received within the reach of its jurisdiction, excepting only nonprofit organizations. It places the recipients of income into five classes, but the division on a broad basis is between income received by employees as a result of their employment and net income or profit received by those engaged in businesses and professions on their own account. The same rate (one per cent) is imposed upon the income no matter by whom received. It is said, however, that by limiting the duration of the taxable period to the time from April 1 to October 31 and requiring employees to pay on all income actually received during that period, and by providing that those who are independently engaged pay on their net profits during the taxing period determined by taking seven-twelfths of the net profits for the calendar or fiscal year in

which the taxing period falls, produces a discrimination. While sporadic inequalities might occur in other classes, it is difficult to see how this method of determining the basis of the tax shows any purpose to discriminate between the two classes as classes, or that it actually results in discrimination.

It seems obvious to us that a classification based on the fact that income is received as compensation for services as an employee is founded upon a sound distinction. Thousands of laws are found in the statute books conferring rights and imposing liabilities upon employees. It is entirely too late to challenge the validity of such laws. If it is a valid basis of classification for substantive legislation it would seem to be equally valid for taxation purposes. If this is true, then the municipality could have singled out either the class of employees or the class of businesses and professions and imposed a tax upon either, and the one taxed would have had no cause of complaint. Or, it could have imposed a higher rate upon one class, without depriving the members of the class of the equal protection of the law. Instead of so doing, the municipality saw fit to place both classes in the same legislation. We know of no rule prohibiting it. If the formula by which the net profits were to be determined favored those making net profits over those earning wages, it would be a discrimination the municipality has a right to make. However, we find no such discrimination.

We believe this question relating to the constitutionality of this ordinance has been answered by the unanimous decision of the United States Supreme Court in the case of *Walters* v. *City of St. Louis,* 347 U. S., 231, 98 L. Ed., 660, 74 S. Ct., 505. It is dispositive of this case. We quote the opening paragraph of Mr. Justice Jackson's opinion to show the relevancy of that case to the case at bar:

"This appeal challenges a municipal income tax ordinance which excises gross salaries and wages of the employed but only net profits of the self-employed, of corporations and of business enterprises. Appellants, who are wage earners, sued in the state courts for a declaratory judgment and injunction to prevent their employer from withholding the tax and the city from collecting it. Their contention is that the discrimination

between wages and profits which results from allowing certain deductions only to profits violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. It has been overruled by the state courts and is brought here for determination.''

This similarity is more fully confirmed by the various references to the terms of the ordinance in the opinion and footnotes.

At page 236, Mr. Justice Jackson says:

''On its face, the ordinance classifies incomes from taxation according to their sources, one category consisting of salary and wage income and the other of profits from self-employment or business enterprise. Classification of earned income as against profits is not uncommon, sometimes to the advantage of the wage earner and sometimes to his disadvantage. It is a classification employed extensively in federal taxation, which under appropriate circumstances allows deductions to the self-employed not allowed to employees, discriminates sharply between earned income and capital gains, and sets apart certain types of wage earnings for social security tax and for benefits. We cannot say that a difference in treatment of the taxpayers deriving income from these different sources is *per se* a prohibited discrimination. There is not so much similarity between them that they must be placed in precisely the same classification for tax purposes.''

In the *Walters case*, there was an attempt to raise the question as to the validity of an administrative regulation allowing federal income tax to be deducted in computing net profits. No such question was presented in the case at bar, and could not be, because the regulation excludes federal income tax as a deduction. The Supreme Court of Missouri refused to pass upon the question, holding that the regulations were no part of the ordinance and declined to pass upon their validity, but, as noted in the opinion of the United States Supreme Court at page 233, ''intimated that the regulations might be held void hereafter without invalidating the ordinance.''

It seems that the only difference between the St. Louis ordinance and the Cincinnati ordinance is that the latter fixes a period of less than a year for its operation and prescribes a method of fixing net profits, based on net profits for the entire

year.  It does not appear what method of determining net profits was used in the *St. Louis case*, but manifestly some period of time was an element.  We are of the opinion that this method of determining net profits is fair, and perhaps the only practical method, and shows no intent to discriminate for or against either wage earners or earners of net profits.  If the distinction between wages and net profits is a valid basis of classification, a method of assessment that produces a different result when applied to the two classes cannot be an unconstitutional discrimination, and isolated instances of unequal results or burdens within either class do not preclude such classification.

Counsel for plaintiff have urged upon our consideration the provision of the Constitution of Ohio that prohibits retroactive laws (Section 28, Article II), claiming that various provisions for calculating net profits in section 3 of the ordinance violate the article.  We have considered this and fail to find any retroactive operation either as to the provision for calculating the tax or as to the penalty for nonpayment.

Nor do we think that the case of *Youngstown Sheet & Tube Co.* v. *City of Youngstown*, 91 Ohio App., 431, 108 N. E. (2d), 571, is applicable.  In that case, the court passed upon an ordinance that imposed a higher tax upon corporations than upon individuals engaged in the same kind of business.  The court held that was not a valid basis of classification.  In reaching that conclusion the court followed the case of *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S., 389, 72 L. Ed., 927, 48 S. Ct., 553. No such classification is presented in this case.

For these reasons, we find the ordinance and taxes imposed thereby enforceable.

*Judgment accordingly.*

Ross and Hildebrant, JJ., concur.