QUESTIONS: 1. Do meetings held by the appointed boards of commissioners of municipal housing authorities created by s.421.04, F. S., come within the purview of the Sunshine Law, s.286.011, F. S.? 2. Do executive work sessions of commissioners of housing authorities, at which matters concerning policy, collective bargaining, grievance processes, and model lease provisions are discussed, come within the purview of the Sunshine Law, s. 286.011, F. S.?
SUMMARY: The Sunshine Law, s. 286.011, F. S., is applicable to meetings held by the appointed board of commissioners of municipal housing authorities created by s. 421.04, F. S., and to "executive work sessions" of appointed commissioners of such housing authorities at which matters concerning policy, collective bargaining, grievance processes, and "model lease" provisions are discussed. AS TO QUESTION 1: Your first question is answered in the affirmative. Based upon the information received in this office, the Housing Authority of the City of Sanford was created by, and is operating under, Ch. 421, F. S. Section 421.04(1), F. S., creates in each city (as defined in s. 421.03[2], F. S.) "a public body corporate and politic to be known as the `Housing Authority' of the city." (Emphasis supplied.) As defined in s.421.03(1), F. S., "housing authority" means a public corporation created by s. 421.04, F. S., which is an agency of, and established by, municipal government. Cf. AGO 055-326, concluding that the Jacksonville Expressway Authority, which was by statute "created and established a body politic and corporate and agency of the state to be known as the Jacksonville Expressway Authority" (Emphasis supplied.), was an agency of the state within the purview of the state and county retirement system law (Ch. 29801, 1955, Laws of Florida). A housing authority created pursuant to Ch. 421, F. S., to exercise and perform "public and essential governmental functions" set forth therein (see s. 421.08) becomes operative when the governing body of the city by resolution duly declares a need for a housing authority in such city. Section421.04. The mayor, with the approval of the governing body of the city, appoints the commissioners of the housing authority "created for said city." (Emphasis supplied.) Section 421.05. For causes specified in s. 421.07, a commissioner of an authority may be removed by the mayor with the concurrence of the governing body of the city. A complete and full financial accounting and auditing of a housing authority's operation is required to be made annually by a certified public accountant, a copy of such accounting and auditing being filed with the city's governing body not less than 90 days after the close of each fiscal year. Section 421.091, F. S. At least once a year, housing authorities are required to file with the city clerk a report of their activities for the preceding year and make recommendations for additional legislation or other actions deemed necessary. Section 421.22, F. S. The Florida Supreme Court early held that the property of a municipal housing authority is held and used for municipal purposes and thus exempted from taxation under s. 1, Art. IX and s. 16, Art. XVI of the Constitution of 1885. State v. McDavid, 200 So. 100 (Fla. 1941); State v. Campbell, 1 So.2d 483 (Fla. 1941); and see s.423.02, F. S., exempting such authorities from all taxes and special assessments and providing that they may agree with the municipality to make payments to it in lieu of taxes or special assessments for services, improvements, or facilities furnished by the municipality for the benefit of a project owned by the authority. In AGO 055-245, this office concluded that a county housing authority created under s. 421.27, F. S., providing that "[i]n each county of the state there is hereby created a public body corporate and politic to be known as the `housing authority' of the county", was an agency or institution of the county within the purview of the state and county officers and employees retirement statute (Ch. 29801, 1955, Laws of Florida). Section286.011, F. S., in pertinent part, requires "[a]ll meetings of any board or commission of . . . any agency or authority of any . . . municipal corporation . . . at which official acts are to be taken . . . to be public meetings open to the public at all times." In light of the aforementioned statutory provisions, attorney general opinions, and authorities, I conclude that a municipal housing authority is an agency or authority of the municipality within the purview of s. 286.011, F. S., and governed thereby. Moreover, s.286.011, F. S., does not in terms qualify or restrict its operative force to elective boards of any agency or authority of the municipalities; indeed, many of the boards or commissions referred to therein are appointive, and no distinction is made between elective or appointive bodies. The statute applies to any and all boards and commissions of any agency or authority of any municipality. See AGO 073-223. AS TO QUESTION 2: Your second question is answered in the affirmative. Your letter inquires as to whether executive work sessions discussing policy are within the scope of the Sunshine Law. This office has stated that gatherings such as "workshop meetings" of planning and zoning commissions, AGO 074-94; "conference sessions" or meetings held by a town council prior to regular meetings, AGO 074-2; "conciliation conferences" of a human relations board, AGO 074-358; "work sessions" of a city council, Inf. Op. to the Honorable Glen Darty, State Attorney, March 4, 1972; and "executive sessions" held to discuss personnel matters, Inf. Op. to Ms. Margaret Bosarge, December 22, 1972, are all subject to the commands of the Sunshine Law. Accordingly, executive work sessions of a municipal housing authority created by s. 421.04, F. S., are within the purview of the Sunshine Law. When discussing collective bargaining in executive work sessions of a housing authority, it should be noted that the new Collective Bargaining Act, Ch. 447, F. S., exempts from the Sunshine Law all discussions between the chief executive officer of the public employer and the legislative body of the public employer relative to collective bargaining. However, pursuant to s. 447.605(2), F. S., collective bargaining negotiations between a chief executive officer and a bargaining agent are not exempt from s. 286.011, F. S. In AGO 075-48, this office attempted to delineate the scope and applicability of the above exemption. It was concluded that the exemption does not allow private discussions of a proposed "mini-perc ordinance" or discussions regarding the attitude or stance that a public body intends to adopt in regard to unionization and/or collective bargaining. It was the view of this office that the exemption extends only to actual ongoing collective bargaining and, accordingly, is inapplicable to such policy matters or to personnel policies or the like. As to whether the Sunshine Law, s. 286.011, F. S., is applicable to executive work sessions at which grievances and personnel matters are discussed, the courts have repeatedly stated that personnel matters are within the scope of s. 286.011. See Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969); City of Miami Beach v. Berns 245 So.2d 38 (Fla. 1971); Canney v. Board of Public Instruction of Alachua County, 228 So.2d 260 (Fla. 1973); Times Publishing Co. v. Williams, 222 So.2d 470 (2 D.C.A. Fla., 1969). In particular regard to executive work sessions where "model leases" are discussed, the court in Berns, supra, and Doran, supra, held that discussions of condemnation matters, personnel matters, pending litigation, or any other matter relating to city government are subject to the commands of the Sunshine Law, so long as the discussions involve any matter on which foreseeable action will or may be taken by the covered public agency. In AGO 073-56, this office concluded that a public agency could not confer privately with its attorney to discuss pending litigation or any other matter not exempted from s.286.011, F. S. Therefore, s. 286.011 is applicable to discussions at executive work sessions involving the terms and conditions of "model leases."